STATE of Minnesota, Respondent,

v.

Jerry VANG, Appellant.

Nos. A12–0956, A13–0922.

Supreme Court of Minnesota.

May 7, 2014.

Lori Swanson, Attorney General, Saint Paul, MN; and John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant Ramsey County Attorney, Saint Paul, MN, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special Assistant State Public Defender, Saint Paul, MN, for appellant.

## OPINION

DIETZEN, Justice.

In August 2001, the State filed a delinquency petition charging then 14–year–old appellant Jerry Vang with first-degree felony murder (drive-by shooting) and second-degree felony murder (drive-by shooting) arising out of the shooting death of David Vang; and attempted first-degree felony murder (drive-by shooting) in connection with the shooting and resulting injuries sustained by Kou Vang. Appellant was later indicted by a grand jury on those same charges. He subsequently entered guilty pleas to first-degree felony murder (drive-by shooting) and attempted first-degree felony murder (drive-by shooting), he was convicted of those charges, and sentence was imposed. In 2009, ap-

pellant filed a petition for postconviction relief, arguing that he was never certified to adult court and that the juvenile court lacked subject matter jurisdiction to impose adult sanctions on him. On appeal this court agreed, and vacated appellant's convictions and sentences and remanded appellant's case to the district court for further proceedings. *Vang v. State,* 788 N.W.2d 111, 117–18 (Minn.2010).

On remand, appellant pleaded not guilty to the original charges and, despite his objections that the district court lacked subject matter jurisdiction, the matter proceeded to trial. A jury found appellant guilty of all three counts, and judgment of conviction was entered on the offenses of first-degree felony murder (drive-by shooting) and attempted first-degree felony murder (drive-by shooting). He appealed and was granted a stay to pursue a postconviction petition. The postconviction court summarily denied the petition and the appeal of that order was consolidated with appellant's direct appeal. For the reasons that follow, we affirm.

In the afternoon of August 7, 2001, police responded to a report of a shooting near Minnehaha Avenue in Saint Paul. When they arrived, police officers determined that David Vang and his brother Kou Vang had been shot. They were both transported to a hospital. David Vang died at the hospital and Kou Vang suffered a gunshot wound to his right elbow. Several witnesses at the scene indicated that appellant was a passenger in a white Acura that was driven by Kor Vang, that the car stopped in the alley behind David and Kou's house where the brothers were standing with some friends, that an argument ensued between appellant and David Vang, and that appellant then pulled out a handgun and shot both David and Kou.

The State filed a delinquency petition in Ramsey County Juvenile Court alleging appellant had committed first-degree felony murder (drive-by shooting), in violation of Minn.Stat. § 609.185(a)(3) (2012), and second-degree felony murder (drive-by shooting), in violation of Minn.Stat. § 609.19, subd. 1(2) (2012), resulting in the death of David Vang; and attempted first-degree felony murder (drive-by shooting), in violation of Minn.Stat. §§ 609.17 (2012), 609.185(a)(3), resulting in gunshot injuries to Kou Vang. Appellant was indicted by the grand jury on the same charges.

In September 2001, the State moved to certify the proceedings to adult court. *See* Minn.Stat. § 260B.125, subd. 1 (2012). The parties subsequently informed the court that they had negotiated a resolution of appellant's case, and appellant pleaded guilty to first-degree felony murder (drive-by shooting) and attempted first-degree felony murder (drive-by shooting). The court accepted appellant's guilty pleas, convicted him of the two offenses, and sentenced him to a term of life with the possibility of release on the first-degree murder conviction, and a concurrent term of 200 months for the attempted first-degree murder conviction. The court also entered an order certifying the proceedings to adult court, but that order was captioned "Juvenile Division." *In re Welfare of J.V.,* No. JO–98–556100, Order at 1 (Ramsey Cty. Juv. Ct. filed Nov. 7, 2001).

In July 2009, appellant filed a petition for postconviction relief arguing that his adult certification was invalid. On appeal we reversed, concluding that the judge was sitting as the juvenile court at the time appellant was convicted and sentenced as an adult. *Vang,* 788 N.W.2d at 117. Because the court was sitting as the juvenile court at the time appellant was convicted and sentenced, appellant's convictions and sentences were void for lack of subject matter jurisdiction. *Id.* at 117–18. We remanded the case to the district court,

not to the juvenile court, because appellant was then over 21 years old. *Id.* at 118 n. 6.

On remand, the State re-filed the grand jury indictment on the original charges against appellant in district court. Appellant pleaded not guilty to the charges, and filed a motion for removal of jurisdiction from district court to juvenile court, arguing that the district court lacked subject matter jurisdiction. The district court denied the motion. Appellant filed a petition for a writ of prohibition in the court of appeals to prevent the matter from proceeding in the district court, which was also denied. *State v. Vang*, No. A10–1862, Order at 3 (Minn.App. filed Nov. 9, 2010), *rev. denied* (Minn. Jan. 18, 2011).

At trial, the State presented testimony establishing that on the afternoon of August 7, 2001, brothers David Vang, Kou Vang, and Ken Vang were in the alley behind their house with two friends. One of the friends had recently purchased a car and the five youths were looking at the car and fixing a broken taillight. It was a hot day, so they moved across the alley to the shade in front of a neighbor's garage. While they were standing in the shade, a white Acura driven by Kor Vang and occupied by appellant proceeded down the alley and then stopped in front of the group. Appellant rolled down his window and yelled "what do you bang," meaning "what gang are you in," and David answered "we don't bang nothing." An argument ensued, and appellant asked if the group wanted "some sh* * with him." Kou responded that the group did not want any problems with appellant.

Appellant exited the car and said "f* *k you" to the five people present in the alley.

Then appellant took out a handgun and fired six or seven times toward David, Kou, and the other three bystanders, and in the direction of the garages behind them. Appellant's shots hit David three times and hit Kou one time.[1] David tried to flee but collapsed nearby. Kou and the others fled. Appellant got back in the car and fired at least one more shot as he and Kor Vang drove off. Kou, who had run between two garages in the alley, discovered that he had been shot in his right arm. Two bullets hit the garage behind the victims. Both David and Kou were transported to Regions Hospital. David died as a result of his gunshot wounds, and Kou was treated for the gunshot wound to his arm. At the hospital, Kou identified appellant as the shooter in a police photo lineup.

Police investigators found the white Acura parked at a nearby residence and arrested appellant inside the residence. The other three youths also identified appellant as the shooter when appellant was presented to each of them individually in a show-up. The police recovered six 9mm shell casings from the alley and one 9mm shell casing from inside the white Acura, as well as a Smith and Wesson 9mm handgun from the front passenger seat of the Acura. The casings found in the alley and the Acura, as well as a bullet recovered from David's body, matched the ballistics of the handgun recovered from the Acura.

During the investigation, police discovered that appellant and the Vang brothers had a history of fighting with each other. Specifically, on July 6, 2001, the Vang brothers went to appellant's house to speak to him about punching and beating Kou at a laundromat. When appellant

---

1. The record is unclear whether Kou was shot once or twice in the right elbow. Kou testified that he was shot "just right below the elbow, and the second time was right below the elbow." But the paramedic that treated Kou referred to only one wound in his testimony.

came out, an argument and fight ensued between David and appellant that was broken up by appellant's father.

At trial appellant admitted that he shot David and Kou Vang, but claimed it was in self-defense. According to appellant, the July 6 incident caused him to be fearful that David and Kou wanted to kill or seriously injure him. He testified that David and Kou came to his house on July 6, and when appellant came to the door, David "rushed" him without provocation and they started fighting. While he was on the ground, David and Kou beat him up and then David grabbed a shovel and swung it at appellant.

Appellant testified that on the day of the shooting he and Kor Vang drove into the alley in question to "try and smooth things out" with David and Kou. According to appellant, when the car stopped he started a conversation with David and Kou and asked "why [were] they trying to jump my little brothers." Kou Vang responded that they didn't want any more trouble, which satisfied appellant that they had made peace. But when appellant got out of the car, David got angry and stepped towards appellant in a threatening manner, yelling "angry words." At this point, David was only five or six feet away from appellant and appellant felt afraid because David was so close. Also, David was bigger and older than appellant, and appellant remembered that David had beat him to the ground a month earlier. Appellant testified that he shot David because he believed he had no other alternative in order to save himself.

The jury found appellant guilty of all three counts, and judgment of conviction was entered on the counts of first-degree felony murder (drive-by shooting) and attempted first-degree felony murder (drive-by shooting). Appellant was sentenced to life with the possibility of release, and to a consecutive 90–month sentence. Appellant was granted a stay of his direct appeal and then filed a petition for postconviction relief alleging ineffective assistance of trial counsel. The postconviction court summarily denied the petition without a hearing. This consolidated appeal followed.

On appeal, appellant challenges (1) the subject matter jurisdiction of the district court to preside over his case; (2) the sufficiency of the evidence to support the convictions; (3) the instruction given to the jury on drive-by shooting; (4) the constitutionality of the sentence of life with the possibility of release; (5) the imposition of the 90–month consecutive sentence; and (6) the dismissal of his petition for postconviction relief without an evidentiary hearing. We will address each issue in turn.

### I.

Appellant first argues that the district court lacked subject matter jurisdiction to preside over his case. According to appellant, he was never certified to adult court, and therefore the juvenile court had exclusive jurisdiction to hear the matter. Consequently, he argues that this court erred in remanding the case to the district court for prosecution. *Vang*, 788 N.W.2d at 118.

 Subject matter jurisdiction refers to a court's authority to hear the type of dispute at issue and to grant the type of relief sought. *Williams v. Smith*, 820 N.W.2d 807, 812–13 (Minn.2012); *see also Robinette v. Price*, 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943). "Put differently, subject matter jurisdiction is a court's 'statutory or constitutional *power* to adjudicate the case.'" *Giersdorf v. A & M Constr., Inc.*, 820 N.W.2d 16, 20 (Minn. 2012) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). The question of whether subject matter jurisdiction

exists is a question of law that we review de novo. *Federated Retail Holdings, Inc. v. Cnty. of Ramsey*, 820 N.W.2d 553, 558 (Minn.2012).

The scope of the district court's authority in this matter is set forth in the Minnesota Constitution and relevant statutes. The district court has original jurisdiction in all civil and criminal cases. Minn. Const. art. VI, § 3. But Minn. Stat. ch. 260B (2012) carves out a narrow category of cases from the subject matter jurisdiction of district courts and vests that jurisdiction exclusively in the juvenile court. *See In re Welfare of K.A.A.*, 410 N.W.2d 836, 838 (Minn.1987).

Minnesota Statutes section 260B.101, subdivision 1, provides, subject to two exceptions not relevant in this case,[2] that "the juvenile court has original and exclusive jurisdiction ... in proceedings concerning any minor alleged to have been a delinquent, ... prior to having become 18 years of age." *Id.* But once an individual turns 21, original and exclusive jurisdiction returns to the district court even if the offense is alleged to have been committed before the individual became 18 years of age. Minn.Stat. § 260B.193, subd. 5(d) (providing that a district court has original and exclusive jurisdiction over a proceeding that involves an individual who is alleged to have committed an offense before his or her 18th birthday and in which a criminal complaint is filed before expiration of the statute of limitations and after the individual's 21st birthday).

▮ We conclude that under Minn.Stat. § 260B.193, subd. 5(d), the district court had original and exclusive jurisdiction over appellant's offenses. Appellant was 23 years old when his case was remanded

to the district court in *Vang*, 788 N.W.2d at 118. The State subsequently filed an indictment in district court charging appellant with three counts of murder committed before appellant turned 18, and consequently the district court had original and exclusive jurisdiction. *See* Minn. Stat. § 260B.193, subd. 5(d). Thus, consistent with the statutory scheme enacted by the Legislature, appellant became too old for the juvenile court to have exclusive jurisdiction over the case, and the district court's general jurisdiction attached under Minn.Stat. § 484.01, subd. 1(2) (2012) (providing that "[t]he district courts shall have original jurisdiction in ... all cases of crime committed or triable therein").

## II.

▮ Appellant next argues that his first-degree felony murder and attempted first-degree felony murder convictions must be vacated because there was insufficient evidence that he committed the underlying felony drive-by shooting offense. *See* Minn.Stat. §§ 609.185(a)(3), 609.66, subd. 1e (2012). When assessing the sufficiency of the evidence, "we make a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *State v. Brown*, 732 N.W.2d 625, 628 (Minn.2007). "The verdict will not be overturned if, giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *State v. Chomnarith*, 654 N.W.2d 660, 664 (Minn.2003).

---

**2.** The two exceptions are when the proceedings are certified to district court under section 260B.125, and when the offenses involve certain traffic violations under section 260B.225. *See* Minn.Stat. § 260B.101, subd. 1.

To convict appellant of first-degree felony murder (drive-by shooting) of David Vang, the State was required to prove beyond a reasonable doubt that: (1) David died; (2) appellant caused David's death; (3) appellant acted with intent to kill David; (4) at the time that appellant caused David's death, appellant was committing or attempting to commit the offense of drive-by shooting under Minn. Stat. § 609.66, subd. 1e; and (5) appellant's conduct occurred in Ramsey County. Minn.Stat. § 609.185(a)(3).[3] Appellant's challenge to the sufficiency of evidence is limited to the predicate felony offense. The offense of drive-by shooting is set forth in Minn.Stat. § 609.66, subd. 1e. It provides:

> (a) Whoever, while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward another motor vehicle or a building is guilty of a felony and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $6,000, or both.
>
> (b) Any person who violates this subdivision by firing at or toward a person, or an occupied building or motor vehicle, may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

Thus, to prove that appellant committed a drive-by shooting, the State was required to establish beyond a reasonable doubt that: (1) appellant was in or had just exited a motor vehicle; (2) appellant recklessly discharged a firearm at or toward another motor vehicle or a building; and (3) appellant's offense occurred in Ramsey County. *See* Minn.Stat. § 609.66, subd. 1e(a); *see also State v. Hayes*, 826 N.W.2d 799, 806 (Minn.2013). Appellant challenges the sufficiency of the evidence that he "recklessly discharged a firearm at or toward another motor vehicle or a building."[4] Essentially, he argues that if the evidence presented at his trial proves that he discharged the firearm with an intent to kill David and Kou, it cannot also support a finding that he recklessly discharged the firearm at or toward a motor vehicle or building.

■ The offense of first-degree felony murder involving the predicate offense of drive-by shooting, Minn.Stat. § 609.66, subd. 1e, requires the State to prove not only that the defendant acted with the intent to shoot and kill the victim, but also that the defendant recklessly discharged a firearm at or toward another motor vehicle or a building. We have previously explained that a person "recklessly discharges a firearm" when the person consciously disregards a substantial and unjustifiable risk. *State v. Engle*, 743 N.W.2d 592, 593–94 (Minn.2008). Moreover, we have held that "intent" and "recklessness" are not mutually exclusive. *State v. Cole*, 542 N.W.2d 43, 51 (Minn.1996). Thus, a person can simultaneously intend to kill someone and recklessly discharge a firearm by

---

**3.** To convict appellant of attempted first-degree felony murder (drive-by shooting) of Kou Vang, the State was required to prove beyond a reasonable doubt that: (1) appellant acted with intent to kill Kou; (2) appellant committed an act that was a substantial step toward, and more than mere preparation for, killing Kou; (3) at the time that appellant acted with the intent to kill Kou, appellant was committing or attempting to commit the offense of drive-by shooting; and (4) appellant's conduct occurred in Ramsey County. Minn.Stat. §§ 609.185(a)(3), 609.17, subd. 1.

**4.** Because appellant does not challenge the sufficiency of the evidence that appellant was in or had just exited a motor vehicle, we do not address that issue. *See State v. Edrozo*, 578 N.W.2d 719, 722 n. 4 (Minn.1998) (declining to address issue not raised by the parties).

firing it in a manner that demonstrates a conscious disregard of a substantial and unjustifiable risk of injury to other people or property. For example, if a person intentionally kills someone by placing a bomb in the victim's car that is in a parking lot crowded with other people or property, one could reasonably conclude that the person acted with both an intent to kill the victim and a conscious disregard of a substantial and unjustifiable risk to other people or their property. Similarly, if a person intends to kill someone by recklessly discharging a firearm in a manner that reflects a conscious disregard of a substantial and unjustifiable risk to a motor vehicle or building, one could reasonably conclude that the person both intentionally killed the victim and recklessly discharged the firearm toward the motor vehicle or building.

■ We conclude that the intent to kill element of Minn.Stat. § 609.185(a)(3), is not mutually exclusive of the recklessly discharging a firearm element of the drive-by shooting statute, Minn.Stat. § 609.66, subd. 1e.[5] Although the intent to recklessly discharge a firearm and the intent to kill the victim may occur simultaneously, they are separate and distinct, and both must be proven to convict the defendant. The recklessness element focuses on the manner in which the defendant discharges the firearm and the intent element focuses on the defendant's desire to kill another.

■ Viewing the evidence in a light most favorable to the verdict, we conclude that the evidence is sufficient to support the predicate offense of drive-by shooting, Minn.Stat. § 609.66, subd.1e. The State offered various exhibits showing the relationship between appellant, the car in which he was riding, the alley, and the buildings in the alley. Photographs and testimony by the State's witnesses established that appellant fired seven shots in a narrow alley, striking a garage door frame, the garage door, and the interior west wall of the garage. The fact that the bullets were fired in a densely populated urban area in the direction of five individuals, with two of the seven bullets striking the garage behind the victims, supports the jury's finding that appellant discharged a firearm in a manner that reflected a conscious disregard of a substantial and unjustifiable risk to people and the surrounding buildings.[6]

5. Despite appellant's assertion to the contrary, *Hayes*, 826 N.W.2d 799, does not support his position because *Hayes* did not address the situation presented here: when a defendant intentionally shoots at an individual, misses, and hits a motor vehicle or a building. Instead, the issue in *Hayes* was whether section 609.66, subdivision 1e(b), constitutes a separate offense or is a sentencing enhancement provision, and whether the evidence was sufficient to support Hayes' conviction of first-degree felony murder (drive-by shooting). 826 N.W.2d at 803–05. We concluded that subdivision 1e(b) is a sentencing enhancement provision, not a separate offense, that is applicable only when a person has committed the offense of drive-by shooting as defined in subdivision 1e(a). *Hayes*, 826 N.W.2d at 805. We reversed Hayes' conviction of first-degree felony murder (drive-by shooting) on the ground that the evidence was not sufficient to support the conviction. *Id.* at 806. We reasoned that the evidence failed to prove that Hayes recklessly discharged a firearm at or toward another motor vehicle or a building. *Id.* Instead, Hayes recklessly discharged a firearm at or toward the same motor vehicle in which Hayes was an occupant. *Id.*

6. We acknowledge that the record does not specify precisely which of appellant's shots hit David and Kou, and which hit the garage. Specifically, the sequence of the shots is unclear, such that appellant's first three shots may have been aimed directly at and hit David. But even if the acts constituting the drive-by shooting—namely the reckless discharge of the firearm toward the garage—occurred *after* the intentional shooting of

In sum, there is sufficient evidence to support appellant's convictions of first-degree murder while committing a drive-by shooting and attempted first-degree murder while committing a drive-by shooting.

### III.

Appellant argues that the district court failed to properly instruct the jury on the elements of drive-by shooting, and therefore he is entitled to a new trial. Specifically, appellant relies on *Hayes*, 826 N.W.2d 799, to argue that the district court erred by failing to instruct the jury that to be convicted of the predicate offense of drive-by shooting the State must prove that appellant recklessly discharged a firearm at or toward another motor vehicle or a building.

■■■ The district court has broad discretion in its selection of jury instructions. *State v. Anderson*, 789 N.W.2d 227, 239 (Minn.2010). But a district court errs when its jury instructions confuse, mislead, or materially misstate the law. *State v. Vang*, 774 N.W.2d 566, 581 (Minn.2009); *State v. Moore*, 699 N.W.2d 733, 736 (Minn.2005). We review the jury instructions as a whole to determine whether they correctly state the law in language that can be understood by the jury. *State v. Scruggs*, 822 N.W.2d 631, 642 (Minn.2012).

■■■ Appellant did not object to the jury instruction given by the district court, and therefore we review the instructions for plain error. *See State v. Matthews*, 779 N.W.2d 543, 548 (Minn.2010). Under the plain-error test, an appellant must show that there was (1) an error; (2) that

is plain; and (3) the error must affect substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). An error is plain if it is clear or obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). The third prong is satisfied if the error was prejudicial, meaning that there is a reasonable likelihood that the error had a significant effect on the jury's verdict. *Griller*, 583 N.W.2d at 741. If all three prongs of the test are met, we then determine whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* at 740.

■■■ The district court instructed the jury that appellant committed drive-by shooting if the State proved, among other things, that he "recklessly discharged a firearm at or toward a person." It did not instruct the jury that the State must prove appellant recklessly discharged a firearm at or toward another motor vehicle or a building. *See Hayes*, 826 N.W.2d at 806 (citing Minn.Stat. § 609.66, subd. 1e(a)).

Assuming without deciding that the failure to instruct the jury was plain error, we conclude appellant has not established that the error affected his substantial rights. *See State v. Larson*, 787 N.W.2d 592, 601 (Minn.2010) (not analyzing the first two prongs of the plain-error test because the third prong was dispositive). Specifically, appellant has failed to meet his heavy burden of proving that there is a reasonable likelihood that the error had a significant effect on the jury's verdict. *See Griller*,

David, the evidence is sufficient to convict appellant of first-degree felony murder and attempted first-degree felony murder. *See State v. Harris*, 589 N.W.2d 782, 792 (Minn. 1999) (concluding that when the underlying felony and the killing are part of one continuous transaction, it is irrelevant whether the

felony took place before, after, or during the killing). Here, the killing of David and the attempted killing of Kou occurred during the same chain of events as the drive-by shooting, and consequently there is sufficient evidence to support appellant's convictions.

583 N.W.2d at 741. The evidence presented by the State proved that appellant recklessly discharged a firearm at or toward a building. It is undisputed that at least two bullets struck a garage. In light of the overwhelming evidence that appellant recklessly discharged the firearm toward the garage, we conclude that there is no reasonable likelihood that the alleged error affected the jury's verdict. *See State v. Sontoya,* 788 N.W.2d 868, 873 (Minn.2010) (concluding that the defendant's substantial rights were not affected because "[t]he evidence of Sontoya's guilt was overwhelming"); *Larson,* 787 N.W.2d at 601 (holding that the defendant's substantial rights were not affected because there was "considerable evidence" of the defendant's guilt).

## IV.

Appellant argues that his life sentence is unconstitutional under both the federal and state constitutions because he was a juvenile at the time of the offense, and a mandatory life sentence for a juvenile offender violates the principles of *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Pursuant to Minn. Stat. § 609.185(a)(3), appellant was sentenced to imprisonment for life for his first-degree murder conviction. In accordance with Minn.Stat. § 244.05, subd. 4(b) (2012), appellant must serve at least 30 years of his life sentence and then he will be eligible for release.[7]

Constitutional interpretation is a legal question that we review de novo. *State v. Brooks,* 604 N.W.2d 345, 348 (Minn.2000). When the challenger claims that a statute imposes cruel or unusual punishment, he "bears the heavy burden ... of showing that our culture and laws emphatically and well nigh universally re-

ject the sentence." *State v. Heden,* 719 N.W.2d 689, 698 (Minn.2006) (citation omitted) (internal quotation marks omitted). Because appellant asserts claims under both the federal and state constitutions, we will address each constitutional claim separately.

### A.

In *Miller,* —— U.S. ——, 132 S.Ct. 2455, the Supreme Court considered whether the imposition of a mandatory life sentence without the possibility of release for those under the age of 18 at the time of their crimes violated the Eighth Amendment's prohibition against cruel and unusual punishments. The Court concluded that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," because such a sentencing scheme forecloses a sentencing judge from taking into account how children are different. *Id.* at ——, 132 S.Ct. at 2469.

Appellant argues that his mandatory life sentence with the possibility of release after 30 years violates the United States Constitution under the reasoning of *Miller,* —— U.S. ——, 132 S.Ct. 2455. We disagree. *Miller* did not hold that a juvenile homicide offender could not be sentenced to life imprisonment *with* the possibility of release. Instead, *Miller* held more narrowly that "a judge or jury must have the opportunity to consider mitigating circumstances" before imposing a sentence of life in prison *without* the possibility of release on a juvenile. *Id.* at ——, 132 S.Ct. at 2475. Appellant's life sentence with the possibility of release after 30 years is not tantamount to a death sentence. *See id.* at ——, 132 S.Ct. at 2466–68. Because appellant is eligible for

---

7. Because appellant's sentences for first-degree murder and attempted first-degree mur-

der run consecutively, he will not be eligible for release until he serves both sentences.

release after 30 years, his mandatory life sentence for first-degree murder does not constitute cruel and unusual punishment under the Eighth Amendment and the principles of *Miller.*

## B.

■■■■ Appellant also contends that his sentence violates the Minnesota Constitution. The state constitution contains a provision that is nearly identical to the Eighth Amendment except that it prohibits "cruel *or* unusual" punishments instead of "cruel *and* unusual" punishments. *Compare* Minn. Const. art. I, § 5 (emphasis added), *with* U.S. Const. amend. VIII (emphasis added). This difference in wording is "not trivial" because the "United States Supreme Court has upheld punishments that, although they may be cruel, are not unusual." *State v. Mitchell,* 577 N.W.2d 481, 488 (Minn.1998).

■■■■ To determine whether a particular sentence is cruel or unusual under the Minnesota Constitution, we "separately examine whether the sentence is cruel and whether it is unusual." *State v. Juarez,* 837 N.W.2d 473, 482 (Minn.2013). To determine whether a sentence is "cruel," we "compare the gravity of the offense to the severity of the sentence." *Id.* To determine whether a sentence is "unusual," "we generally consider whether a 'consensus exists among the states' that the sentence offends evolving standards of decency." *Id.* (quoting *Mitchell,* 577 N.W.2d at 490). The appellant has the burden to show that his sentence is unusual because there is a consensus against it. *Heden,* 719 N.W.2d at 698.

In *Mitchell,* we considered whether a sentence of life imprisonment for a minimum of 30 years imposed upon a 15–year–old child convicted of first-degree murder constituted cruel or unusual punishment in violation of the Minnesota Constitution.

577 N.W.2d at 488–90. We concluded that a mandatory sentence of life imprisonment for a minimum of 30 years is neither cruel nor unusual punishment as applied to a juvenile convicted of first-degree murder. *Id.* at 490. We reasoned that the juvenile committed "one of the most heinous crimes, murder in the first degree," and consequently the juvenile's harsh punishment was not cruel and out of proportion to his crime. *Id.* at 489. Moreover, we concluded that the juvenile's sentence was not unusual as we had already affirmed a life sentence given to a 15–year–old child in *State v. Ouk,* 516 N.W.2d 180, 185 (Minn.1994), and there was no consensus among the states that the sentence offended evolving standards of decency nationwide. *Mitchell,* 577 N.W.2d at 490.

■■■ Appellant argues that the Supreme Court's decisions in *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and *Miller,* —— U.S. ——, 132 S.Ct. 2455, demonstrate that the standards of decency have evolved since *Mitchell* was decided in 1998, and the court should overrule its decision in *Mitchell.* Generally, we are extremely reluctant to override previous case law unless there is a compelling reason to do so. *State v. Lee,* 706 N.W.2d 491, 494 (Minn.2005). Appellant has not presented a compelling reason in this case to overrule *Mitchell.* While *Roper, Graham,* and *Miller* afford juveniles greater constitutional protection than adults in certain circumstances, none of them hold that a mandatory sentence of life imprisonment with the possibility of release after 30 years is unconstitutional.

We conclude that appellant's mandatory sentence of life imprisonment for a minimum of 30 years is not cruel or unusual punishment. Therefore, appellant's sentence does not violate either the Eighth

Amendment to the United States Constitution or Article I, Section 5, of the Minnesota Constitution.

## V.

Appellant argues that the district court erred when it imposed a longer sentence upon his conviction on remand than when he pleaded guilty to the same charges in 2001. The sentence imposed upon his conviction was a term of life with the possibility of release and a consecutive term of 90 months; and the sentence imposed after his guilty plea was a term of life with the possibility of release and a concurrent term of 200 months. Appellant does not challenge his sentence on constitutional grounds [8] but instead relies upon a policy the court adopted in *State v. Holmes,* 281 Minn. 294, 161 N.W.2d 650 (1968).

We afford the district court great discretion in the imposition of sentences and cannot substitute our judgment for that of the district court. *State v. Spain,* 590 N.W.2d 85, 88 (Minn.1999). Generally, we will not interfere with a district court's discretion in sentencing unless the sentence is disproportionate to the offense or unfairly exaggerates the criminality of the defendant's conduct. *State v. Fardan,* 773 N.W.2d 303, 322 (Minn.2009). "Consecutive sentencing of multiple felonies with multiple victims is permissive and within the broad discretion of the [district] court." *State v. Richardson,* 670 N.W.2d 267, 284 (Minn.2003); *see also* Minn.Stat. § 609.15, subd. 1 (2012); Minn. Sent. Guidelines 2.F2. We will not reverse a district court's decision to impose a consecutive sentence unless there has been a clear abuse of discretion. *State v. Cruz–Ramirez,* 771 N.W.2d 497, 512 (Minn.

2009); *Neal v. State,* 658 N.W.2d 536, 548 (Minn.2003).

In *Holmes,* we considered, among other issues, whether a defendant who has obtained a reversal of a conviction and then is retried and convicted of the same offense may be sentenced to a longer term of imprisonment after the retrial. 281 Minn. at 296, 161 N.W.2d at 652. The defendant was convicted of robbery and sentenced to 20 years to run concurrently with a prior conviction for receiving stolen goods. *Id.* at 296, 161 N.W.2d at 652. The defendant obtained a reversal of the robbery conviction on appeal, and on remand he was again convicted of the same offense. *Id.* at 296, 161 N.W.2d at 652. The district court sentenced the defendant to 20 years imprisonment for the robbery conviction, but made the sentence consecutive to his prior conviction for receiving stolen goods. *Id.* at 295–96, 161 N.W.2d at 651–52. We held that it was improper for the court "to impose on a defendant who has secured a new trial a sentence more onerous than the one he initially received." *Id.* at 296, 161 N.W.2d at 652. We based our holding on public policy, not on constitutional grounds, concluding "as a matter of law that any increase in penalty upon a retrial inevitably discourages a convicted defendant from exercising his legal rights." *Id.* at 298, 161 N.W.2d at 653.

In *Alabama v. Smith,* 490 U.S. 794, 798–99, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court considered whether a harsher sentence imposed after trial than that previously imposed after a guilty plea violates a defendant's due process rights. Specifically, the question was whether the presumption of vindictiveness recognized in *North Carolina v. Pearce,* 395 U.S. 711,

---

8. Specifically, appellant does not argue that the district court violated his due process rights by vindictively imposing a longer sentence after he was tried and convicted than when he pleaded guilty to the same charges. *See Alabama v. Smith,* 490 U.S. 794, 798–99, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

725–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), applied to this fact situation. *Smith,* 490 U.S. at 798–99, 109 S.Ct. 2201. In *Pearce,* the Court concluded that a sentencing judge cannot impose a harsher sentence upon a defendant who successfully attacks his conviction, and is then reconvicted of the same offenses after retrial, unless the judge affirmatively states objective reasons for imposing the harsher sentence upon the defendant after the new trial. *Pearce,* 395 U.S. at 726, 89 S.Ct. 2072.

 In *Smith,* the Court concluded that the presumption of vindictiveness does not apply when a greater penalty is imposed after trial than was imposed after a prior guilty plea. 490 U.S. at 801, 109 S.Ct. 2201. The Court reasoned that there are sufficient potential justifications for imposing a harsher sentence after a trial. *Id.* at 801–02, 109 S.Ct. 2201. Specifically, the more lenient sentence upon a plea of guilty may have been the result of the prosecutor recommending a lower sentence in return for the defendant's plea. *Id.* Moreover, the sentencing court will likely have far more information after trial about the "nature and extent of the crimes charged," which could warrant an increase in penalty. *Id.* at 801, 109 S.Ct. 2201. Finally, the defendant's conduct during trial and pre-sentencing "may give the judge insights into his moral character and suitability for rehabilitation," which were not available when the defendant originally pleaded guilty. *Id.* Consequently, a sentence that is imposed after trial and that is more onerous than that previously imposed after a guilty plea does not violate the defendant's due process rights unless the defendant proves the judge was acting vindictively.

 We conclude that the district court did not abuse its discretion by imposing a longer sentence upon appellant after his trial and conviction. We decline to extend the policy of *Holmes* to the imposition of a greater sentence after trial when the original sentence was imposed after a guilty plea.[9] There are significant justifications for a sentencing judge to impose a more onerous sentence after trial than that received pursuant to a plea agreement. Specifically, the more lenient sentence upon a plea of guilty may have been a result of the prosecutor recommending a lower sentence in return for the defendant's plea. Moreover, the district court will likely have far more information after trial and pre-sentencing about the offenses and the defendant, including the severity of the offenses, the impact on any victims, and the defendant's suitability for rehabilitation.[10]

9. The concurrence argues that we should overrule *Holmes.* We do not overrule existing precedent unless it is absolutely necessary. *Lee,* 706 N.W.2d at 494 (explaining that "[w]e are extremely reluctant to overrule our precedent under principles of *stare decisis*"). Here, neither party briefed, argued, or requested that we overturn our decision in *Holmes. See State v. Swaney,* 787 N.W.2d 541, 551 n. 4. (Minn.2010) (explaining that the issue of whether the defendant waived his confrontation rights was not raised by the parties, and therefore was not squarely before the court). Moreover, a resolution of the issue is not necessary to the disposition of appellant's case. *See Lipka v. Minn. Sch. Emps. Ass'n, Local 1980,* 550 N.W.2d 618,

622 (Minn.1996) (explaining that "judicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us"). Both parties frame the issue as whether we should extend *Holmes* to apply to the imposition of a greater sentence after trial as compared to the sentence previously imposed after a guilty plea. Thus, it is not necessary to overturn *Holmes* to decide this case. Instead, we simply decide not to extend *Holmes* to this case. Our decision in this case does not implicitly or explicitly reaffirm *Holmes.*

10. Indeed, the sentencing judge in this case demonstrated significant reasons for impos-

## VI.

Finally, appellant argues that the post-conviction court erred in summarily denying his request for postconviction relief. In his petition, appellant claims that his trial counsel was ineffective.

■ We review the denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion. *Riley v. State,* 819 N.W.2d 162, 167 (Minn.2012). Further, we review a postconviction court's factual determinations under a clearly erroneous standard, and do not reverse those determinations unless they are not factually supported by the record. *Scherf v. State,* 788 N.W.2d 504, 507 (Minn.2010); *see also Riley,* 819 N.W.2d at 167. An evidentiary hearing on a petition is required whenever "material facts are in dispute which have not been resolved in the proceedings resulting in conviction and which must be resolved in order to determine the issues raised on the merits." *Riley,* 819 N.W.2d at 167 (quoting *State ex rel. Roy v. Tahash,* 277 Minn. 238, 244, 152 N.W.2d 301, 305 (1967)).

■ Essentially, Minn.Stat. § 590.04, subd. 1 (2012) contemplates a two-step analysis. Under the first step, a postconviction court must determine whether the facts considered in the light most favorable to the petitioner, together with the arguments presented by the parties, "conclusively show" that the petitioner is not entitled to relief. *Id.* If the court concludes there are no material facts in dispute that preclude dismissal, and the State is entitled to dismissal of the petition as a matter of law, the court is not required to hold an

evidentiary hearing. *Riley,* 819 N.W.2d at 167. Alternatively, if the court concludes material facts are in dispute that have not been resolved in the proceedings resulting in conviction and that must be resolved in order to determine the issues raised on the merits, the court must proceed to the second step, which is to schedule the petition for a hearing. Minn.Stat. § 590.04, subds. 1, 3.

■ We examine ineffective-assistance-of-counsel claims under the Supreme Court's two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Leake v. State (Leake III),* 767 N.W.2d 5, 10 (Minn.2009). To prevail on a claim that his counsel was ineffective, appellant must demonstrate that (1) the attorney's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for the attorney's unprofessional error, the outcome would have been different. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052; *Sanchez–Diaz v. State,* 758 N.W.2d 843, 847–48 (Minn.2008); *State v. Rhodes,* 657 N.W.2d 823, 842 (Minn.2003); *Gates v. State,* 398 N.W.2d 558, 562 (Minn.1987). We need not analyze both prongs if either one is determinative. *Rhodes,* 657 N.W.2d at 842.

■ Trial counsel's performance is presumed to be reasonable. *Schneider v. State,* 725 N.W.2d 516, 521 (Minn.2007). The objective standard of reasonableness is defined as " 'representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar cir-

---

ing a more onerous sentence on appellant after trial than that received pursuant to the earlier plea agreement. At the sentencing hearing, the judge observed that there was "no indication" that appellant was remorseful for his actions. Moreover, the judge found it

"appropriate there be some recognition" of the deep and lasting impact appellant's actions had on Kou Vang, and therefore the judge ordered appellant's 90–month sentence for the attempted murder of Kou to run consecutively to appellant's life sentence.

cumstances.' " *State v. Gassler,* 505 N.W.2d 62, 70 (Minn.1993) (quoting *White v. State,* 309 Minn. 476, 481, 248 N.W.2d 281, 285 (1976)). We " 'judge the reasonableness of counsel's challenged conduct on the facts ... viewed as of the time of counsel's conduct.' " *Rhodes,* 657 N.W.2d at 844 (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Generally, we will not review an ineffective-assistance-of-counsel claim that is based on trial strategy. *State v. Bobo,* 770 N.W.2d 129, 138 (Minn.2009); *State v. Voorhees,* 596 N.W.2d 241, 255 (Minn.1999). The determination of which defenses to raise represents an attorney's trial strategy. *Voorhees,* 596 N.W.2d at 255. Trial strategy also includes the extent of counsel's investigation and the selection of evidence presented to the jury. *White v. State,* 711 N.W.2d 106, 111 (Minn. 2006); *Opsahl v. State,* 677 N.W.2d 414, 421 (Minn.2004).

 Appellant argues that his trial counsel was ineffective for advising him to reject a plea bargain and proceed to trial on a self-defense claim. According to appellant, this advice was objectively unreasonable because there was no evidence that he feared great bodily harm or death. Moreover, he claims he was prejudiced by this advice because he would have accepted the State's plea offer and received a shorter sentence if he had been properly advised.

 To establish a claim of self-defense justifying the taking of human life, appellant was required to come forward with evidence that his actions were necessary to resist or prevent an offense that appellant reasonably believed exposed him or another to great bodily harm or death. Minn.Stat. § 609.065 (2012). In order for a killing to be justified for this reason, the killing must have been done in the reasonable belief that it was necessary to avert death or great bodily harm. *State v.*

*Johnson,* 719 N.W.2d 619, 631 (Minn.2006); *State v. Dodis,* 314 N.W.2d 233, 237 (Minn. 1982). The defendant has the burden of going forward with evidence to support a claim of self-defense, but once the defendant has met that burden, the State has the burden of disproving one or more of the elements of the defense beyond a reasonable doubt. *State v. Basting,* 572 N.W.2d 281, 286 (Minn.1997).

Appellant presented evidence at trial that David intended to seriously harm or kill him. Appellant testified that David and Kou had come to his house on July 6, that David had "rushed" him without provocation, and that David and Kou beat him while he was on the ground and then David grabbed a shovel and tried to seriously injure him. Appellant stated that the fight made him "afraid" that David intended to seriously harm or kill him, and his fear continued until the day of the shooting. A couple of days later, David had driven by his house and "flicked" him off, and then two days before the shooting, David came by the house looking for appellant. On the day of the shooting, appellant stopped in the alley in order to smooth things over with David and Kou. But David "got angry." When appellant got out of the car David stepped toward him and yelled at him in a threatening manner. Appellant testified that he experienced fear because David was only five or six feet away, was bigger than him, and he remembered being beaten to the ground by David in the previous fight. There was also evidence that appellant did not have an opportunity to retreat because the alley was narrow, there was a fence and two cars directly behind him, and the driver had also gotten out of the car and appellant did not have the keys to the car. When asked if he felt that he had any alternative to shooting the gun to save himself, appellant replied "no."

We conclude that if appellant's trial counsel advised him to reject the State's plea offer and proceed to trial on a claim of self-defense, such a recommendation was not objectively unreasonable. The district court concluded the evidence was sufficient to support appellant's self-defense theory, and instructed the jury regarding that defense. Although it is a close call, we cannot say that trial counsel's alleged advice was objectively unreasonable.

Appellant contends that *Leake v. State (Leake II)*, 737 N.W.2d 531 (Minn.2007), supports his argument. In *Leake II*, we considered whether trial counsel's conduct fell below a reasonable standard by recommending that Leake reject a plea agreement and proceed to trial. *Id.* at 540–41. We concluded that an evidentiary hearing was necessary to determine whether Leake satisfied the *Strickland* test. *Id.* at 541. Leake rejected a plea agreement from the State and was subsequently convicted and sentenced to life imprisonment without the possibility of release. *Id.* at 539–40. Leake claimed that his trial counsel acted objectively unreasonably by inaccurately advising Leake that if convicted the most severe sentence he would receive would be life imprisonment with possibility of release after 30 years. *Id.* We concluded that in the context of plea bargaining, an attorney's advice falls below objectively reasonable standards "when the attorney's inaccurate or misleading factual statements tend to affect a defendant's decision to reject a plea bargain and proceed to trial." *Id.* at 540. Moreover, "a defendant is prejudiced by such ineffective assistance if there is a reasonable likelihood the plea bargain would have been accepted had the defendant been properly advised." *Id.* at 540.

*Leake II* is factually distinguishable. Appellant was represented at different times before trial by the Ramsey County Public Defender's Office, and by two other lawyers. One lawyer allegedly advised appellant that he did not have a viable self-defense claim, but the other lawyer and his associate allegedly advised appellant that he had a viable self-defense claim. It is unknown what advice, if any, the Public Defender's Office gave appellant on this topic.

On this record, it was a judgment call on whether to proceed to trial based on a self-defense theory. Certainly, it was a close call. In hindsight, self-defense did not work before the jury. But we cannot say the attorney's alleged advice fell below an objective standard of reasonableness. There is a difference between rejecting a plea based on erroneous legal advice, *see Leake II*, 737 N.W.2d at 541 (concluding that a hearing was necessary to determine whether counsel acted objectively unreasonably by misstating defendant's potential sentence if convicted), and rejecting a plea based on a plausible but ultimately unsuccessful defense. We therefore conclude that the postconviction court did not err when it summarily denied appellant's petition for postconviction relief.

Affirmed.

WRIGHT, J., took no part in the consideration or decision of this case.

STRAS, Justice (concurring).

I write separately because Part V of the court's opinion relies on *State v. Holmes*, 281 Minn. 294, 161 N.W.2d 650 (1968), a case that has not stood the test of time. In *Holmes*, we held that when an appellate court overturns a conviction on appeal, "judicial policy" prevents a district court from imposing a longer sentence following a retrial for the same offense. *Id.* at 296, 161 N.W.2d at 652. In the years before and after *Holmes*, however, we have never

invoked "judicial policy" as a reason to create another prophylactic criminal rule.[1] Nor have we explained our authority to make "judicial policy," the scope of "judicial policy," or even how to determine "judicial policy." Elsewhere, I have questioned our authority to reverse convictions and reduce sentences in the "interests of justice." *See State v. Beecroft*, 813 N.W.2d 814, 867 (Minn.2012) (Stras, J., dissenting) (observing that there is no constitutional basis for reversing prophylactically "in the interests of justice"). I harbor similar doubts about the constitutionality of reducing a criminal sentence based on a highly subjective and ill-defined "judicial policy."

*Holmes* is also questionable for another reason. Just 1 year after we decided *Holmes*, the Supreme Court of the United States decided *North Carolina v. Pearce*, 395 U.S. 711, 723–24 (1969), in which it applied the Fourteenth Amendment's Due Process Clause to circumstances similar to those in this case. In deciding *Holmes*, we relied in large part on a federal case, *Patton v. North Carolina*, 381 F.2d 636 (4th Cir.1967), that was overruled by *Pearce*. *See Holmes*, 281 Minn. at 299, 303, 161 N.W.2d at 654, 656 (discussing *Patton*). In fact, in *Pearce*, the Supreme Court directly modified the rule from *Patton* by reviewing *Pearce v. North Carolina*, 397 F.2d 253 (4th Cir.1968), a "brief per curiam judgment [of the Fourth Circuit] citing its *Patton* decision," *Pearce*, 395 U.S. at 714, 89 S.Ct. 2072. In *Pearce*, the Court held that a sentencing judge *may* impose a longer sentence following a successful appeal by a defendant, but only if the judge's reasons for doing so "affir-

matively appear" in the record and those reasons are "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726, 89 S.Ct. 2072.

The court's opinion in this case seems to implicitly recognize that *Holmes* may no longer be good law. After all, if *Holmes* governs, it makes little sense for the court to reject Vang's claim based on *Alabama v. Smith*—a case that has *nothing* to do with judicial policy and that merely declines to extend part of *Pearce*'s constitutional analysis to sentences originally imposed pursuant to a guilty plea, *see* 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). At the same time, however, the court notes that Vang "does not challenge his sentence on constitutional grounds," so the court's reliance on *Smith* is puzzling.

In my view, the clearer and more straightforward approach in this case would be to expressly recognize that *Holmes* is no longer good law and conclude that the Due Process Clause of the Fourteenth Amendment provides the proper mechanism for evaluating Vang's sentence. Under such an approach, Vang would still not be entitled to relief,[2] but at least we would avoid further confusion of the law.

1. The phrase "judicial policy" has appeared in tort cases, *see Mathews v. Mills*, 288 Minn. 16, 22, 178 N.W.2d 841, 845 (1970), in marital-dissolution cases, *see Hagerty v. Hagerty*, 281 N.W.2d 386, 389 (Minn.1979), and even as a reason to enjoin picketing, *Johnson Bros. Wholesale Liquor Co. v. United Farm Workers*

*Nat'l Union, AFL–CIO*, 308 Minn. 87, 98, 241 N.W.2d 292, 299 (1976), but we have never relied on it in any other criminal case.

2. The court is correct that Vang does not raise a due-process challenge to his sentence. Even if he did, his request for relief would

clearly fail under *Smith,* which is materially identical to the case before us. *See* 490 U.S.