*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1226**

State of Minnesota,
Respondent,

vs.

Arthur Anthony Torgesen,
Appellant.

**Filed January 30, 2017
Affirmed
Bjorkman, Judge**

Anoka County District Court
File No. 02-CR-08-9238

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Craig E. Cascarano, Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Reilly, Judge; and Connolly, Judge.

## UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges his second-degree murder conviction, arguing the district court erred in denying his motion to withdraw his guilty plea and in determining that he received effective assistance of counsel. We affirm.

**FACTS**

On July 18, 2008, appellant Arthur Anthony Torgesen stabbed his wife, S.M., to death in the bedroom of their family home. He then poured gasoline all over the bedroom and himself and lit a fire. He did so with the intent to kill himself, but changed his mind and called 911. During the 911 call, he stated, "I started a fire. I tried to kill myself. I killed my wife. I stabbed her in the bedroom." Law enforcement responded to the call and found Torgesen sitting naked inside the house with a large fire burning. Torgesen told the officers that he killed his wife and started the fire.

Respondent State of Minnesota charged Torgesen with first-degree murder, second-degree murder, and arson. On August 26, 2009, Torgesen pleaded guilty to second-degree murder. He entered a *Norgaard* plea[1] because he suffers from a variety of mental-health issues and could not clearly remember the events in question. The plea agreement required the state to dismiss the first-degree murder and arson charges, and Torgesen agreed that the state would seek to civilly commit him on the ground that he was mentally ill and dangerous. Both parties anticipated that Torgesen, who had been diagnosed with terminal cancer, would spend the rest of his life at the state psychiatric hospital in St. Peter. But the

---

[1] The parties and district court classify Torgesen's plea as an *Alford* plea. An *Alford* plea occurs when a defendant maintains his innocence but pleads guilty because he reasonably believes the state has sufficient evidence to obtain a conviction. *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977). Torgesen did not maintain his innocence; he acknowledged he killed his wife but indicated he could not remember the incident clearly due to his mental-health problems. Accordingly, his plea is not an *Alford* plea, but rather a *Norgaard* plea. *See State v. Ecker*, 524 N.W.2d 712, 716-17 (Minn. 1994) (stating a *Norgaard* plea occurs when a defendant pleads guilty even though he claims a loss of memory of committing the offense).

parties and district court also acknowledged that if Torgesen were discharged from civil commitment, he would return for sentencing. During the plea hearing, the district court directly asked Torgesen if he understood that if he were released he would return for sentencing and could face a sentence of up to 30 years. Torgesen indicated that he understood.

As anticipated, Torgesen was civilly committed in a separate court proceeding and was admitted to St. Peter Regional Treatment Center (St. Peter). Over time, Torgesen became dissatisfied with St. Peter and began efforts to be released. On July 3, 2013, Torgesen moved to withdraw his guilty plea. The district court did not rule on this motion. On November 21, 2014, Torgesen was discharged from St. Peter and his civil commitment was terminated. On December 8, Torgesen renewed his motion to withdraw his guilty plea. Following a hearing, the district court denied the motion. On May 8, 2015, the district court sentenced Torgesen to 306 months in prison.

Torgesen appealed, and subsequently filed a petition for postconviction relief based on ineffective assistance of counsel. The district court denied the petition without an evidentiary hearing. Torgesen challenges the denials of his motion to withdraw his guilty plea and his postconviction petition.

## D E C I S I O N

I. **Withdrawal of Torgesen's guilty plea is not necessary to correct a manifest injustice.**

A defendant must be permitted to withdraw his plea at any time if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest

injustice exists when a guilty plea is not valid. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. *Id.* A plea is not voluntary when it is entered into due to improper pressures or inducements. *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). The validity of a guilty plea is a question of law, which we review de novo. *Raleigh*, 778 N.W.2d at 94. But whether a plea is voluntary presents a question of fact, which we review for clear error. *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994).

Torgesen argues his plea is invalid because it was the result of improper inducements. First, he contends that the plea is involuntary on its face because he could not agree to be civilly committed and therefore the plea was based on a condition that neither party could ensure. We disagree. Torgesen is correct that the focal point of the plea agreement was that he would be civilly committed as mentally ill and dangerous. And that is exactly what happened. The state commenced a civil-commitment proceeding and a different district court judge ordered Torgesen's commitment. To the extent the plea agreement included a promise that Torgesen would be civilly committed, it was fulfilled.[2] *See Brown*, 606 N.W.2d at 674 (stating that when a plea rests on a promise or agreement of the prosecutor, the promise must be fulfilled).

Second, Torgesen asserts that the plea agreement included an unfulfilled promise that he would remain in St. Peter for the rest of his life. We are not persuaded. It is clear that the parties thought Torgesen did not have long to live due to his cancer diagnosis, and

---

[2] The state concedes that if Torgesen had not been civilly committed following the guilty plea, the agreement likely would have been void.

that he would likely remain committed for the rest of his days. And the state represented that its expert, Dr. James Farnsworth, would "put in his opinion as to whether Mr. Torgesen would be discharged" in the event Torgesen's civil commitment was questioned. But the record reveals that the parties considered what would happen if Torgesen were discharged from civil commitment. During the plea hearing, the district court explicitly asked Torgesen if he understood that if he were to be released from commitment, he would "have to come back and see me [and] I'm going to send you to prison for as long as 30 years." Torgesen indicated he understood.

At the plea-withdrawal hearing, the prosecutor asked Torgesen if, at the time he pleaded guilty, he understood that if he were discharged from St. Peter he would return to court for sentencing. Torgesen again indicated he understood. When asked if he understood that meant a prison sentence, Torgesen again answered affirmatively. As the district court noted in denying Torgesen's post-discharge motion to withdraw his guilty plea, the "expectation Mr. Torgesen had at the time of the plea that has gone unfilled is that he survived." Torgesen's successful response to medical treatment was not something the state could or did promise.

Moreover, it is clear from the record that Torgesen did not want to remain in St. Peter. The attorney who represented him when he entered the guilty plea testified that as time went on Torgesen was "more and more adamant that he just wished he had gone to prison" and that he had "to get out of this place." And when the petition seeking his discharge from St. Peter was denied, Torgesen himself successfully petitioned for reconsideration. While Torgesen argues that the state breached a promise because he did

5

not remain in St. Peter, it was his own efforts that resulted in his discharge from the facility and the end of his civil commitment.

Third, Torgesen argues that his plea was involuntary because it was based on the unfulfilled promises that St. Peter would be a great place to live and that he would receive treatment for his posttraumatic stress disorder (PTSD) through the department of veterans affairs (VA). The district court expressly discredited his testimony that he received such assurances; we defer to such credibility determinations. *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012). And the record belies Torgesen's assertion that the state made such promises. During the hearing on the plea-withdrawal motion, Torgesen's counsel indicated that Torgesen was not promised he would receive services from the VA while at St. Peter. And defense counsel further testified that at the time of the plea he believed placement at St. Peter was Torgesen's "least worst option." Accordingly, Torgesen's argument that his plea was induced by unfulfilled promises fails.

Finally, Torgesen generally asserts that his plea is invalid because it was not intelligent. The purpose of the intelligence requirement "is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *Trott*, 338 N.W.2d at 251. Torgesen argues that the plea was not intelligent because it "essentially side-stepp[ed] the entire probate court commitment process." This argument is unavailing. The record indicates that following the guilty plea, Torgesen went through civil-commitment proceedings. And during the plea hearing, the district court went through the rights Torgesen was giving up by pleading guilty, including his opportunity to present a mental-illness defense. Torgesen

6

acknowledged that he understood the rights he was giving up and wished to plead guilty. On this record, we conclude Torgesen's guilty plea was intelligent.

**II.    The district court did not abuse its discretion by denying Torgesen's motion to withdraw his guilty plea under the fair and just standard.**

Prior to sentencing, the district court may allow a defendant to withdraw a guilty plea "if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. Under this standard, the district court must consider: (1) the reasons a defendant advances to support withdrawal and (2) potential prejudice to the state. *Raleigh*, 778 N.W.2d at 97. We review the denial of a motion to withdraw a guilty plea under the fair and just standard for an abuse of discretion, and will reverse only in a "rare case." *State v. Cubas*, 838 N.W.2d 220, 223 (Minn. App. 2013), *review denied* (Minn. Dec. 31, 2013).

Torgesen argues that withdrawal of his guilty plea is fair and just because his plea resulted from improper inducements and the conditions at St. Peter were not what he expected. And he contends that the state would not be prejudiced if he were permitted to withdraw his guilty plea. We are not persuaded.

The district court considered the reasons advanced by Torgesen, but found that "the record does not support [Torgesen's] claims regarding unmaterialized inducements or promises." As discussed above, we likewise conclude that the guilty plea was not based on improper inducements or pressures. Torgesen's remaining argument is essentially that it would be fair and just to allow plea withdrawal because his experience at St. Peter was "a total and complete disaster." The district court recognized that Torgesen was

7

dissatisfied with his experience at St. Peter, but properly concluded that it did not rise to the level of warranting plea withdrawal.

And the district court found that the state would be prejudiced if Torgesen were permitted to withdraw his plea. The record supports this finding. More than six years had passed between the offense and the plea-withdrawal hearing. As Torgesen acknowledges, the key issue for trial would not be whether he committed the offenses, but his mental state at the time he did so. Torgesen interacted with multiple people at that time, including a 911 operator, the victim's mother, a neighbor, and police officers. Establishing his mental state would likely involve testimony from some or all of these witnesses. The state expressed concern over the availability of certain witnesses, and the fact that their recollections would undoubtedly have faded during the intervening six years. The passage of time is a relevant factor, particularly when resolution of an issue depends on the "faded memories of witnesses." *Id.*; *see also Black v. State*, 725 N.W.2d 772, 776 (Minn. App. 2007) (noting that the memories of witnesses likely faded after a two-year delay).

In sum, this is not a "rare case" warranting reversal. The district court gave due consideration to Torgesen's arguments and the state's assertion of prejudice. On this record, we discern no abuse of discretion by the district court in denying the plea-withdrawal motion under the fair and just standard.

## III.    Torgesen did not receive ineffective assistance of counsel.

To prevail on his ineffective-assistance-of-counsel claim, Torgesen must demonstrate "(1) that his counsel's representation 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's

8

unprofessional errors, the result of the proceeding would have been different.'" *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). An attorney provides reasonable assistance when he exercises the customary skills and diligence that a reasonably competent attorney would exercise under the circumstances. *Dukes v. State*, 621 N.W.2d 246, 252 (Minn. 2001). An attorney's performance is presumed to be reasonable. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014). And a defendant who makes an ineffective-assistance-of-counsel claim following a guilty plea must demonstrate that, but for the ineffective representation, he would not have entered the plea. *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994). We review the denial of postconviction relief based on ineffective assistance of counsel de novo. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013).

Torgesen argues that his counsel was ineffective because he did not investigate the conditions at St. Peter, misrepresented Torgesen's health issues, and should not have permitted Torgesen to go forward with the plea hearing due to his mental state.[3] We consider each argument in turn.

To support his first argument, Torgesen points to his attorney's testimony that, based on what he knows now, he would not advise a client to seek a placement at St. Peter. But the reasonableness of an attorney's conduct is judged as of the time of the conduct. *Vang*, 847 N.W.2d at 267. At the hearing on the plea-withdrawal motion, Torgesen's

---

[3] Torgesen also asserts his counsel's advice to waive civil-commitment proceedings was ineffective. This claim is without merit. As discussed above, Torgesen went through civil-commitment proceedings following his guilty plea.

9

attorney testified as to his thought process and conduct prior to Torgesen entering the guilty plea, stating that at the time he viewed St. Peter as the "least worst option." Based on his review of Torgesen's psychological evaluations and the relevant legal standards, Torgesen's attorney determined that pursuing a mental-health defense would be "a huge risk." He spoke with "a number of people who had involvement in St. Peter and experience," all of whom indicated that it would be a more humane option than prison. And he acknowledged that he was not sure that if he had visited St. Peter, he would have "seen the reality of what was actually happening there." Finally, Torgesen did not submit any evidence that a reasonable attorney in 2009 would have conducted such an investigation.

This record supports the district court's determination that counsel's performance was not unreasonable. At the time counsel explained the commitment option, there was nothing to indicate that St. Peter staff were misrepresenting the conditions at the facility. Nor is there any indication that visiting St. Peter would have revealed the concerns regarding the conditions at St. Peter that have subsequently come to light.

Torgesen next contends that his counsel was ineffective because he falsely represented that Torgesen only had 17 months to live. Nothing in the record supports this contention. Indeed, both the prosecutor and defense counsel involved with the plea agreement testified that they did not discuss the specifics of Torgesen's life expectancy. But by all accounts, Torgesen was in very poor health at the time of the plea hearing. Following the plea-withdrawal hearing, the district court observed that Torgesen appeared to have received excellent medical care at St. Peter and to be "in better health now than at

the time of the plea." Moreover, we are not persuaded that Torgesen's argument relates to his counsel's legal representation. Torgesen was aware of his own health problems and undoubtedly had a more intimate knowledge of those concerns than his counsel did. Accordingly, any assessment relating to Torgesen's health concerns did not render his attorney's representation ineffective.

Torgesen also argues that his counsel was ineffective because he failed to recognize that Torgesen "was in such a mental state that he should not have gone forward with the plea." We disagree. As noted above, nothing in the record indicates the guilty plea was invalid. Torgesen was questioned extensively as to whether he understood the rights he was giving up by pleading guilty, and indicated he did. The district court asked Torgesen if his PTSD or medications affected his ability to make clear decisions. Torgesen indicated they did not, and stated that he was thinking clearly. At the plea-withdrawal hearing, the prosecutor testified that he did not have any concerns about Torgesen's understanding of the plea agreement and what was happening during the plea hearing. In its postconviction order, the district court noted that Torgesen was indeed emotional during the plea hearing, particularly when the victim's family was in the courtroom. But it determined that Torgesen was not so emotional as to warrant halting the proceedings. On this record, we conclude that the district court did not err in finding counsel was not ineffective.

Finally, Torgesen asserts that, at the very least, the matter should be remanded for an evidentiary hearing on his ineffective-assistance-of-counsel claim. "An evidentiary hearing is not required unless there are material facts in dispute that must be resolved to determine the postconviction claim on its merits." *Powers v. State*, 695 N.W.2d 371, 374

11

(Minn. 2005). Here, all the relevant issues were discussed at the plea-withdrawal hearing. At that hearing, the district court heard testimony concerning the alleged inducements related to the plea, counsel's investigation and conduct prior to the plea, his observations of Torgesen's mental state at the time of the plea, and Torgesen's health concerns. Accordingly, there are no material facts in dispute, and the district court did not abuse its discretion by denying the petition without a hearing.

**Affirmed.**