*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1462**


State of Minnesota,
Respondent,

vs.

Romere Jerome Powell,
Appellant.


**Filed September 6, 2016
Affirmed
Halbrooks, Judge**


Hennepin County District Court
File No. 27-CR-14-37591

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and

Hooten, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction of simple robbery under Minn. Stat. § 609.24 (2012), arguing that the state failed to prove that he used or threatened to use force in the taking or carrying away of property. We affirm.

## FACTS

On June 20, 2014, P.L. traveled from South Dakota to downtown Minneapolis for a bachelor party. P.L. and his friends began drinking in their hotel room before continuing the celebration at a few downtown bars. When they left the last bar at approximately 2:00 a.m., P.L. separated from the group to escort a female he met to her vehicle. After she departed, P.L. began to walk back to his hotel alone.

P.L. never made it back to the hotel because he was stopped outside of a parking ramp by appellant Romere Jerome Powell and another man, M.W. Powell and M.W. walked on either side of P.L., placed their arms around him, and directed him into the parking garage. They guided P.L. through the parking garage, through a skyway, and into a second parking garage. Powell and M.W. then put P.L. into the passenger seat of a vehicle.

Once the men were all inside the car, they handed P.L. a small bag containing what they claimed was cocaine[1] and requested $300 for it.[2] P.L. did not have $300 in cash, so the men advised him that they were going to drive to an ATM so that P.L. could

---

[1] The substance tested negative for cocaine.

[2] P.L. testified that he did not solicit the sale of drugs.

withdraw money from his account. P.L. had no idea where he was being taken, as he was completely unaware of the city's geography and was fairly intoxicated.

The men drove approximately 10 to 15 minutes before stopping at a Wells Fargo ATM on Olson Memorial Highway. Powell asked for P.L.'s cards, requested P.L.'s PIN, and left P.L. in the car with M.W. while he accessed the machine.[3] Powell successfully withdrew $300 from P.L.'s bank account. He then drove back to downtown Minneapolis, parked the car, and left with M.W. by foot. P.L. immediately called 911 but disconnected the call when he observed Powell and M.W. walking back toward the vehicle. When the men left a second time, P.L. too left the car and walked into a hotel lobby to call 911 again.

Minneapolis police arrived, and while the officers were standing near the unoccupied car, M.W. came back to the car and attempted to get into the passenger side. Officers engaged M.W. in conversation, and he indicated that the car belonged to Powell, who was at the time walking down the street toward them. Officers stopped Powell to investigate and subsequently conducted a show-up procedure. P.L. positively identified Powell as the driver.

The state charged Powell with two counts of kidnapping and one count of simple robbery. During the jury trial, the district court instructed the jury on two additional lesser-included offenses: misdemeanor theft and felony theft from person. The jury

---

[3] While Powell was out of the car accessing the ATM, P.L. sent a text message to his friends advising them that he had been kidnapped and robbed, relaying whatever knowledge he had of his location to his friends. P.L. testified that he was able to do this because M.W. was in the back seat and could not observe him using the phone.

3

found Powell not guilty of both kidnapping counts but guilty of simple robbery, misdemeanor theft, and felony theft from person. Powell was sentenced to 60 months in prison for the simple-robbery conviction. This appeal follows.

**D E C I S I O N**

Powell challenges the sufficiency of the evidence supporting his simple-robbery conviction, arguing that the state failed to prove beyond a reasonable doubt that he "used force or threatened force in the taking or carrying away of property" as required for a conviction under Minn. Stat. § 609.24.

Our review of a sufficiency-of-the-evidence challenge is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005) (quotation omitted). We assume that the jury "believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "The jury is the ultimate judge of credibility . . . ." *State v. Townsend*, 872 N.W.2d 758, 763 (Minn. App. 2015); *see also State v. Reese*, 692 N.W.2d 736, 741 (Minn. 2005) ("[A]ssessment of witness credibility is a jury function."). A guilty verdict will not be reversed "if, giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted).

4

The state was required to prove beyond a reasonable doubt that Powell was guilty of simple robbery. Simple robbery is defined as:

> Whoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and *uses or threatens the imminent use of force against any person* to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery . . . .

Minn. Stat. § 609.24 (emphasis added).

It is undisputed that Powell took P.L.'s property in P.L.'s presence, knowing that he was not entitled to take it. Powell concedes as much: "Powell has not challenged the jury's guilty verdicts for theft from person and misdemeanor theft. On this record, the state offered sufficient evidence that Powell committed theft." The remaining question is whether the state satisfied the second element of simple robbery—that Powell used force or the threat of imminent force against P.L. to overcome his resistance or to compel acquiescence in the taking or carrying off of his property.

Powell argues that his conviction of simple robbery should be overturned because (1) Powell and M.W. did not use force against P.L. but only subjected him to "gentle nudging" and (2) even if the nudging constituted force, there was no temporal connection between the touching and the carrying away of property.

While it is true that P.L. testified that Powell and M.W. pushed him "gently" and that the responding officer testified that P.L. used the term "friendly" to describe how Powell and M.W. guided him, Powell isolates these words from the rest of the testimony to connote that the interaction was somehow consensual or friendly. Powell also

5

narrowly focuses on the lack of a definition for "force" to suggest that the statute cannot support a conviction.[4] These arguments are strained.

P.L. testified about the series of events that occurred from the moment Powell and M.W. approached him to the time the police arrived. He never made it back to the hotel after he dropped the female off at her car because, as P.L. stated, he was "stopped along the way" by two men who "had come out of a parking ramp and . . . put their arms around me on either side and directed me into the parking ramp." P.L. clarified that "they went around my shoulder on either side of me. So I had, you know, a hand here, a hand here, armpit on each side." Powell and M.W. directed him, with their hands on his body, through one parking ramp, through a skyway, and into another parking lot before placing him in their car. P.L. testified that he "was concerned for [his] safety at the time . . . not doing anything stupid so as to put that in jeopardy." When the men arrived at the vehicle, one opened the door and both guided P.L. into the passenger seat while at least one still had their hands on P.L. They then shut the car door behind him.

When P.L. told the men that he did not have $300 and that he did not want the cocaine, Powell drove to a Wells Fargo ATM to withdraw money from P.L.'s accounts. P.L. testified that he had no idea where they were driving, "was fairly scared," and did not feel as though he had any control of the situation. P.L. also testified that when they

---

[4] Powell maintains that the issue before this court is not a sufficiency-of-the-evidence problem but a question of statutory interpretation because the statute does not define "force." Thus, Powell asks this court to conduct a de novo review and "adopt a sensible, statute-driven definition of 'force' for simple robbery." We decline to engage in this analysis because the facts of this case are sufficient to uphold a simple-robbery conviction.

arrived at the ATM, he did not ask to get out of the car because he was worried about his safety, noting from the moment Powell placed him in the car, that "I wasn't going to try to do anything that was going to put that in immediate danger."

Powell also argues that his conviction should be reversed because any touching that happened in guiding P.L. to the car was too temporally remote from the actual taking of P.L.'s money, i.e., "[T]here must be some outer temporal limit on force preceding a taking." This argument is without merit. The touching in this case was indisputably part of a chain of events designed to result in the taking of P.L.'s property.

The jury heard testimony about the events of June 20, 2014 not only from P.L. but also from the responding officers, who testified consistently about their recollections of P.L.'s report that night. This testimony included descriptions of Powell putting his arms around P.L., guiding him through several unoccupied areas into an unknown car, and driving him to an ATM to withdraw money. Powell urges this court to adopt a bright-line definition for "force" that does not include his actions on the night of June 20, 2014. But the record clearly reflects that P.L. did not go willingly with Powell and M.W., that he feared for his safety, and that he did not willingly give up his property. On these facts, a jury could reasonably conclude that Powell's actions were intended to threaten the imminent use of force against P.L. so as to overcome his resistance to the robbery.

**Affirmed.**

7