**Pierre Lamont LEAKE, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A08–1596.**

Supreme Court of Minnesota.

June 18, 2009.

Lawrence Hammerling, Chief Appellate Public Defender, Mark D. Nyvold, Special Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael K. Walz, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

DIETZEN, Justice.

On September 22, 2003, a jury found appellant Pierre Lamont Leake guilty of first-degree premeditated murder and he was sentenced to life in prison without the possibility of release.[1] On direct appeal, we affirmed Leake's conviction and sentence. *State v. Leake (Leake I)*, 699 N.W.2d 312, 328 (Minn.2005). Subsequently, Leake filed a pro se postconviction petition that was summarily denied. On appeal, we affirmed the postconviction court's decision in part, but reversed and remanded for an evidentiary hearing to determine whether Leake's appellate counsel provided ineffective assistance by failing to bring the ineffective assistance of trial counsel claim on direct appeal. *Leake v. State (Leake II)*, 737 N.W.2d 531, 543 (Minn.2007). After an evidentiary hearing, the postconviction court denied relief and Leake appealed. We affirm.

Leake was charged with and indicted for first-degree premeditated murder under Minn.Stat. §§ 609.11 (2006), 609.185(a)(1) (2008), and 609.106, subd. 2(2) (2004),[2] and for second-degree murder under Minn. Stat. §§ 609.19, subd. 1(1) (2008) and 609.11 (2006) for the stabbing death of Megan Fisher on March 22, 2003. Following a trial, the jury found Leake guilty of first-degree premeditated murder, and not guilty of second-degree murder. The underlying facts are set forth in detail in *Leake I*, 699 N.W.2d at 314–19. At sentencing, the State presented evidence of Leake's 1998 conviction for third-degree criminal sexual conduct to argue that Leake had previously been convicted of a "heinous crime" under Minn.Stat. § 609.106 (2004). The district court found that the prior offense constituted a heinous crime, and concluded that it was required

---

1. Hereinafter, a life sentence without the possibility of release will be referred to as life without parole.

2. The indictment mistakenly referenced Minn. Stat. § 609.106, subd. 2(2), instead of subd. (2)(3). Despite the error, we concluded that it should have been clear to Leake's trial counsel that a sentence of life without parole was possible. *Leake II*, 737 N.W.2d at 541 n. 4.

to sentence Leake to life without parole. *Leake I,* 699 N.W.2d at 319. We affirmed Leake's conviction and sentence on direct appeal. *Id.* at 328.

Leake subsequently filed a pro se petition for postconviction relief seeking an evidentiary hearing, a new trial, vacation of his sentence, and other relief. *Leake II,* 737 N.W.2d at 534. His petition asserted six errors, including that he was denied effective assistance of trial counsel. *Id.* Leake alleged that his lead trial counsel failed to advise him that his maximum sentence upon conviction was life without parole. *Id.* at 539. As support for his claim, Leake relied on the State's plea offer made during the trial that in exchange for his guilty plea, the State would recommend that he be sentenced to life in prison with the possibility of parole after 30 years, and that any additional time for his unrelated probation violation should run concurrently. *Id.* at 544. Both Leake's trial counsel and the district court told Leake on the record that if he was convicted of first-degree murder he would face a life sentence with the possibility of parole after 30 years, plus an additional consecutive sentence for his probation violation. *Id.* at 539. Relying on what he was told on the record, Leake argued that the State's plea offer provided him little benefit, and therefore he had no reason to accept it. Leake rejected the State's offer and was sentenced, contrary to what he was told on the record by his trial counsel and the district court, to life without parole under Minn.Stat. § 609.106, this state's heinous crimes statute, and to a consecutive sentence for his probation violation. 737 N.W.2d at 539. The postconviction court summarily denied Leake's petition. *Id.* at 534.

On appeal to this court, Leake contended that his trial counsel misled him into believing that under the worst-case scenario, if convicted, he would be eligible for parole after 30 years, plus the consecutive sentence related to his probation violation. *Id.* at 539. We interpreted Leake's petition and brief to claim that his appellate counsel was ineffective in failing to raise an ineffective assistance of trial counsel claim on direct appeal. *Id.* at 540 & n. 3. We concluded that at the time of his direct appeal, Leake knew or should have known of the ineffective assistance of trial counsel claim, and therefore that claim was *Knaffla*-barred. *Id.* at 534–35, 540; *see State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). But we also concluded that the postconviction court needed to hold a hearing to determine whether Leake's trial counsel was ineffective in order to resolve the ineffective assistance of appellate counsel claim. 737 N.W.2d at 541. We observed that as part of the hearing, it would probably be necessary to determine: (1) whether trial counsel's failure to advise Leake at the time of the plea offer that his sentence would be life without parole constituted ineffective assistance of trial counsel, and (2) whether there was a reasonable likelihood that Leake would have accepted the State's plea offer had he been properly advised. *Id.*

On remand, the postconviction court conducted an evidentiary hearing. Leake's trial counsel testified that he explained to Leake on several occasions before trial that, based on his criminal history, if he were convicted of the crimes charged, his maximum sentence would be life without parole and a consecutive sentence for his probation violation.[3] Fur-

---

**3.** It is undisputed that Leake's sentence of life with or without the possibility of parole after 30 years would be in addition to a sentence

for his probation violation. Since it is undisputed, we will not analyze it further except to

ther, trial counsel stated that his inaccurate on-the-record advice to Leake was premised on his belief that the prosecutor had not discovered that Leake's maximum sentence upon conviction was life without parole. In the event that the prosecutor did discover the maximum sentence, trial counsel's strategy was to argue that the maximum sentence was barred because, under *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the jury was required to determine whether Leake's prior crime was "heinous" under the statute.

Trial counsel also testified that Leake "never wanted to plead guilty" and that "he wanted to go to trial; he believed he was innocent." Trial counsel indicated that Leake really had "nothing to lose if [he's] going to do 30 years ... and with this type of homicide—with this homicide along with his criminal history, it would have been a very, very difficult, bleak future for Mr. Leake to try to get past the parole board." The prosecutor testified that the plea offer was a "throw away offer" because it was his "strong feeling that Leake was not going to take the offer." The prosecutor stated that he did not discover that Leake faced, upon conviction, a mandatory sentence of life without parole until it was brought to his attention by the person preparing the presentence investigation report.

Leake also testified at the hearing. He stated that trial counsel told him before trial that "if [he] got convicted [he] would get 30 years with the possibility of parole." Leake denied that trial counsel ever advised him that his sentence upon conviction was life without parole.

Following the evidentiary hearing, the postconviction court filed its Findings of Fact, Conclusions of Law, Order and

Memorandum denying Leake's petition for postconviction relief. The court found that trial counsel did advise Leake that he would face life without parole if convicted of first-degree murder and that Leake "chose to go to trial rather than accept the State's offer ... and did not want to accept any offer involving 30 years of imprisonment." The court concluded that Leake failed to show that his trial counsel's representation fell below an objective standard of reasonableness and that there was no reasonable probability that, but for trial counsel's alleged unprofessional errors, the result would have been different. Consequently, the postconviction court also found that Leake's appellate counsel was not ineffective for failing to assert an ineffective assistance of counsel claim. This appeal followed.

## I.

Leake argues that the postconviction court erred in denying his petition and that its finding that trial counsel advised him that he could face life without parole if convicted is not supported by the record. Leake argues that had he been informed of the maximum penalty, there is a reasonable probability that he would have accepted the State's plea offer.

▮▮▮ The procedure for a petition for postconviction relief is governed by Minn. Stat. ch. 590 (2008). The petitioner must prove the facts alleged in the petition by a fair preponderance of the evidence. Minn. Stat. § 590.04, subd. 3; *State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993). Ineffective assistance of counsel claims involve mixed questions of fact and law. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn.2004). We review findings of fact by the postconviction court for sufficiency of the evidence and will not reverse absent an abuse of

note that it continues to be part of Leake's .sentence.

discretion. *Leake II,* 737 N.W.2d at 535. We review issues of law de novo. *Id.*

■ To prevail on a claim that counsel is ineffective, Leake must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for his counsel's unprofessional error, the outcome would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Rhodes,* 657 N.W.2d 823, 842 (Minn.2003); *Gates . v. State,* 398 N.W.2d 558, 562 (Minn.1987).

> A reasonable probability means a probability sufficient to undermine confidence in the outcome. Under the prejudice prong, a defendant must show that counsel's errors actually had an adverse effect in that but for the errors the result of the proceeding probably would have been different. . The reviewing court considers the totality of the evidence before the judge or jury in making this determination.

*Sanchez–Diaz v. State,* 758 N.W.2d 843, 848 (Minn.2008) (citations omitted). This court need not analyze both prongs if either one is determinative. *Rhodes,* 657 N.W.2d at 842.

■ Trial counsel's performance is presumed reasonable. *Schneider v. State,* 725 N.W.2d 516, 521 (Minn.2007). The objective standard is defined as " 'representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances.' " *State v. Gassler,* 505 N.W.2d 62, 70 (Minn.1993) (quoting *White v. State,* 309 Minn. 476, 481, 248 N.W.2d 281, 285 (1976)). We " 'judge the reasonableness of counsel's challenged conduct on the facts . . . viewed as of the time of counsel's conduct.' " *Rhodes,* 657 N.W.2d at 844 (quoting

*Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

■ We conclude that the question of whether Leake satisfied the prejudice prong of the *Strickland* test is dispositive, and therefore we do not reach the question of whether Leake's trial counsel acted reasonably. To the extent that trial counsel deliberately misstated Leake's maximum sentence in open court, such conduct is troubling. *See* Minn. R. Prof. Conduct 4.1 (stating that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of fact or law").

■ On the issue of prejudice, the parties dispute whether Leake must prove that, but for counsel's alleged error, he would have pleaded guilty, or merely that he might have pleaded guilty. Leake argues that he is only required to show a reasonable probability, so as to undermine confidence in the outcome.

In *Strickland,* the United States Supreme Court considered what level of prejudice is necessary to satisfy the second prong of the test adopted by the Court. Based on its analysis, the Court rejected a test that would only require that a defendant show "some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Additionally, the Court rejected a test that would require that a defendant show that counsel's deficient conduct "more likely than not altered the outcome in the case." *Id.* The Court concluded that the appropriate test for prejudice is that a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.; see also Gates,* 398 N.W.2d at 562 (concluding that under *Strickland,* defendant must

show that counsel's errors actually had an adverse effect in that "but for" the errors the result of the proceeding probably would have been different).

In *Leake II,* we discussed prejudice in the context of a rejected plea agreement. After surveying other state court decisions, we observed that these courts "indicate that a defendant is prejudiced by such ineffective assistance if there is a reasonable likelihood the plea bargain would have been accepted had the defendant been properly advised." 737 N.W.2d at 540; *see, e.g., In re Alvernaz,* 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 756 (1992); *People v. Curry,* 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 888 (1997). *But see Williams v. State,* 326 Md. 367, 605 A.2d 103, 110 (1992) (using "substantial probability" test). We accepted this approach and concluded that Leake must show that there was a reasonable likelihood that, but for his counsel's alleged error in failing to properly advise him, he would have accepted the plea offer. *Leake II,* 737 N.W.2d at 541.

The postconviction court found that it was not "reasonably likely" that Leake would have accepted the plea offer. The court found that Leake agreed with trial counsel's strategy and that he "never wanted to settle the case and always wanted to go to trial." The court observed that Leake testified that he "didn't want to plead guilty," and that even if properly advised, there was only a 50 percent chance that he would have accepted the plea offer.

The findings of the court are amply supported by the record. Leake failed to establish a reasonable probability that, but for his trial counsel's alleged error, he would have pleaded guilty.

## II.

The postconviction court found that because Leake did not establish that his trial counsel was ineffective, he also failed to establish that his appellate counsel should have brought an ineffective assistance of trial counsel claim. A claim need not be raised if "appellate counsel could have legitimately concluded" that the claim would not prevail. *Schneider v. State,* 725 N.W.2d 516, 523 (Minn.2007). Because we conclude that Leake's trial counsel was not ineffective, we also conclude that his appellate counsel was not ineffective in failing to bring an ineffective assistance of trial counsel claim.

Affirmed.