*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1523**

State of Minnesota,
Respondent,

vs.

Daniel Joel Spiegel,
Appellant.

**Filed August 8, 2016
Reversed and remanded
Reyes, Judge**

Hennepin County District Court
File No. 27CR143179

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Paul Engh, Minneapolis, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Jesson, Judge.

# U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

On appeal from his convictions of second-degree assault with a dangerous weapon and terroristic threats, appellant argues that the district court committed reversible error

by excluding evidence of a prior false allegation made by the complainant and that the ruling deprived him of his right to present a complete defense. We reverse and remand.

## FACTS

On December 20, 2013, a motorist, D.B., called 911 and reported that appellant, Daniel J. Spiegel, while in his SUV, pointed a gun at D.B. in a grocery-store parking lot in Minnetonka. Minnetonka police officers were dispatched and pulled appellant over after catching up to him. Appellant was called out of his SUV and, after explaining that he had a proper and current permit to carry, officers found a handgun in an anti-snag holster in appellant's pocket and another gun in the SUV. The police determined that appellant had a carry permit in his wallet. Appellant's girlfriend, who was in the passenger seat, was also removed from the SUV. While appellant was stopped, D.B. identified appellant as the person who had pointed the gun at him. The police arrested appellant and told him it was for "a gun-pointing incident," to which appellant responded that he knew "not to do that" and that the gun was never taken out of the holster. In a later interview with police, in response to police questioning him about the incident, D.B. stated, "I've never had that happen before so I was in complete shock so yeah."

Appellant was charged with second-degree assault with a dangerous weapon and terroristic threats. Before trial, appellant moved to admit evidence of a 2001 incident where, according to the police report, D.B. reported to police that "a handgun may have been displayed by" a couple, K.P. and his then-girlfriend T.N., during an altercation in the parking lot of a bar in Blaine. In his offer of proof, appellant submitted the police

2

report and a statement from T.N.[1]  In T.N.'s statement, she denied D.B.'s allegation and stated that the couple was told by the officers that D.B. reported that K.P. had "pulled" a handgun.  After investigating, including searching the couple and their house, officers determined that the couple did not have and had not displayed a gun.

An omnibus hearing was held, and the district court concluded that evidence of the 2001 incident was inadmissible under Minn. R. Evid. 608(b), 404(b), 404(a)(2), 405(b), Minn. Stat. § 609.347, subd. 3(a) (2012), and *State v. Goldenstein*, 505 N.W.2d 332, 340 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993).  Upon reconsideration, the district court concluded that D.B.'s 2001 statement to the police, that a handgun may have been displayed, was admissible for impeachment purposes only pursuant to Minn. R. Evid. 613.

At trial, D.B. and appellant presented conflicting testimony as to what occurred in the store parking lot on December 20, 2013.  D.B. testified that, as he was stopped at a stop sign in the parking lot, appellant yelled at him because "he wasn't happy with the way [D.B.] was driving."  When D.B. parked his car, appellant pulled up next to his passenger side, pointed a gun at him, and then drove away.

Conversely, appellant testified that, because D.B. was driving at "quite a clip of speed" in the parking lot, he rolled down his window and told D.B. to slow down and that he "almost killed [a] pedestrian and t-boned [him and his girlfriend]."  D.B. replied, "You idiot, I stopped."  He then said "F you," gave appellant the finger, and drove off.  When

---

[1] Appellant states in his brief that he also submitted a statement from K.P.; however, that statement was not included in the record on appeal.

appellant was looking for D.B.'s car to get his license-plate number, D.B. started driving towards him, and appellant drove away. Appellant was driving to the police station to report the incident when police pulled him over. Appellant's girlfriend testified consistent with appellant's testimony.

D.B. also testified that, before trial began, he reviewed the 2001 police report with the prosecutor. He testified that he did not remember the incident because he had "drank a lot" that night. After a four-day trial, the jury found appellant guilty of both charges. Appellant received a stay of imposition on the second-degree assault conviction, was placed on probation for three years, and was ordered to serve thirty days on home detention or electronic monitoring. This appeal follows.

### D E C I S I O N

Appellant argues that the district court committed reversible error by excluding evidence of the 2001 incident and that the ruling deprived him of his right to present a complete defense. We agree.

"A defendant has the constitutional right to present a complete defense." *State v. Atkinson*, 774 N.W.2d 584, 589 (Minn. 2009). But this right is not unrestricted. *Id.* In exercising the right to present a complete defense, the defendant must comply with evidentiary rules "designed to ensure both fairness and reliability in the ascertainment of guilt and innocence." *State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003) (quotation omitted). We defer to a district court's evidentiary rulings and will not overturn them absent a clear abuse of discretion. *State v. Cram*, 718 N.W.2d 898, 903-04 (Minn. 2006). A district court abuses its discretion when it acts "arbitrarily, capriciously, or

4

contrary to legal usage." *See State v. Profit*, 591 N.W.2d 451, 464 n.3 (Minn. 1999) (quotation omitted). When an abuse of discretion exists, "the decision will not be reversed if it is found to be harmless beyond a reasonable doubt. Any error in the exclusion of evidence is harmless if the verdict actually rendered was surely unattributable to the error." *Cram*, 718 N.W.2d at 904 (quotations omitted).

In *Goldenstein*, a case involving allegations of sexual abuse of minor children, this court stated that it found "persuasive the rule of law established in several foreign jurisdictions whereby evidence of prior false accusations is admissible both to attack the credibility of the complainant and as substantive evidence tending to prove that the instant offense did not occur" and the foreign courts' reasoning that "the evidentiary rule preventing evidence of specific acts of untruthfulness must yield to the defendant's right of confrontation and the right to prevent a full defense." 505 N.W.2d at 340. We reasoned that, where a case rests heavily on the veracity of the allegation of the alleged victim, prior false reports by the alleged victim may be considered "critical" to the defense. *Id.* We also explained that "the [district] court must first make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists" before such evidence may be admitted. *Id.* We did not define "reasonable probability of falsity" in *Goldenstein*, *id.*, nor have we done so in any case thereafter. However, in the context of determining whether a defendant received ineffective assistance of counsel, the Minnesota Supreme Court has defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Leake v. State*, 767 N.W.2d 5, 10 (Minn. 2009) (quotation omitted). We adopt that standard here and further

5

conclude that the burden is upon the proponent to establish that there is a reasonable probability of falsity. *See Goeb v. Tharaldson*, 615 N.W.2d 800, 816 (Minn. 2000) (stating that the proponent of scientific evidence has the burden of establishing its admissibility by demonstrating the relevant requirements).

Here, the district court concluded that the "[e]vidence of the 2001 incident . . . is not admissible pursuant to the holding in *Goldenstein*" because, "[g]iven the language of D.B.'s report to police in 2001, [appellant] can never meet his burden of proving that a reasonable probability of falsity exists." The district court reasoned that "'may,' as it is used in the police report, is a qualifier of possibility which indicates that D.B. reported to police that a handgun was *possibly* displayed." Therefore, even if there is evidence that no handgun was actually involved, "there is not a reasonable probability that D.B.'s report that a handgun 'may have been displayed' was false."

We conclude that appellant met his burden of proving that there was a "reasonable probability" that D.B.'s 2001 allegation was false. *See Goldenstein*, 505 N.W.2d at 340. While the police report indicates that a gun "may" have been displayed, the record also indicates that D.B.'s accusation was less equivocal. In her statement, T.N. states that the police told the couple that D.B. told officers that K.P. had "pulled" a handgun on D.B. In addition, the record shows that the couple denied the allegation that they had a handgun on the night of the altercation with D.B., which the police investigation confirmed. Based on this record, appellant presented sufficient evidence to undermine our confidence in the truth of D.B.'s 2001 allegation. *See Leake*, 767 N.W.2d at 10.

Therefore, the district court abused its discretion by excluding evidence of the 2001 incident.

Further, we cannot conclude that the exclusion of this evidence was harmless beyond a reasonable doubt. *See Cram*, 718 N.W.2d at 904. First, the two incidents were strikingly similar. In both instances, D.B. got into an altercation with a couple, D.B. later told police that the boyfriend had displayed a gun during the altercation, and the couple denied that the boyfriend had done so. Second, respondent's case rested heavily on the veracity of D.B.'s allegation. *See Goldenstein*, 505 N.W.2d at 340. At trial, D.B. and appellant and his girlfriend presented conflicting testimony as to whether appellant had pointed a gun at D.B. Although the 2001 incident was introduced on cross-examination of D.B. for impeachment purposes, the incident was not fully explored because D.B. claimed he did not remember what had happened that night because he had been drinking. If admitted, the jury could have relied on the evidence of the 2001 incident as substantive evidence to prove that D.B.'s report in this case was false. *See id.* Therefore, we reverse and remand for a new trial.

**Reversed and remanded.**