*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1444**

State of Minnesota,
Respondent,

vs.

Alvin Lee,
Appellant.

**Filed September 19, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-14-23737

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Bratvold, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges his convictions of first-degree criminal sexual conduct and second-degree assault with a dangerous weapon, arguing that the district court erred by

admitting the complainant's out-of-court statements to police and the examining nurse as substantive evidence at trial. In a pro se supplemental brief, appellant also argues that his trial counsel was ineffective, the prosecutor committed misconduct, the evidence is insufficient to support his convictions, and the district court committed evidentiary errors. We affirm.

**FACTS**

Early in the morning on August 12, 2014, A.D. walked into a Brooklyn Park Police Station and reported that she was assaulted overnight by her former boyfriend, appellant Alvin Lee. In two consecutive interviews, one of which was recorded, A.D. told police officers that Lee had been waiting for her when she returned home and had threatened her with a gun and forced her into her apartment. She stated that, once they were inside, he hit her repeatedly with his hands and the gun. When police officers arrived at the door in response to a neighbor's 911 call, she sent them away without opening the door because Lee threatened to shoot her and the officers. But, she explained, Lee then forced her to disrobe and have sex with him. She also reported that he forced her to clean up the blood that had splattered around the apartment and wash the bloodied linens. A.D. consented to the police photographing her various injuries and gave them permission to search her apartment. She then was taken to the hospital, where she recounted the same story to a sexual assault nurse examiner and submitted to a physical examination.

When police searched A.D.'s apartment, they found numerous blood splatters and linens recently washed in bleach. A subsequent search of Lee's residence revealed a black semiautomatic handgun consistent with the one A.D. had described to police.

On August 14, Lee was charged with first-degree criminal sexual conduct and second-degree assault with a dangerous weapon.

Shortly thereafter, A.D. called and left several messages for one of the officers who interviewed her, indicating that the statement she had given about Lee was untrue. Over the next several months, she also contacted the Hennepin County victim's unit, Lee's attorney, and the district court judge assigned to Lee's case to indicate that she had lied about Lee assaulting her. Lee moved to dismiss the charges based in part on A.D.'s recantation, and the district court denied the motion.

At Lee's jury trial, the state sought to admit A.D.'s statements to the officers and the nurse examiner as substantive evidence under Minn. R. Evid. 807, the residual exception to the hearsay rule. After A.D. testified that Lee had not assaulted her and that she had lied to police and the nurse examiner about him doing so, the district court admitted A.D.'s three prior statements without objection. The jury found Lee guilty of both counts. The district court sentenced him to 306 months' imprisonment. This appeal followed.

**D E C I S I O N**

**I.**

Lee argues that the district court erred by admitting A.D.'s statements to police and the examining nurse as substantive evidence. Because he did not object to this evidence at trial, we review the claim for plain error. *State v. Manley*, 664 N.W.2d 275, 283 (Minn. 2003). The three-pronged test for plain error requires an appellant to show that: (1) the district court committed error; (2) the error committed was plain; and (3) the plain error affected his substantial rights. *Id.*

3

It is undisputed that A.D.'s statements to law enforcement and the nurse examiner are hearsay and therefore presumptively inadmissible. *See* Minn. R. Evid. 801-802. The principal issue raised by appellant in this appeal is whether the district court erred in admitting A.D.'s statements under the residual exception to the hearsay rule. A statement may be admitted under the residual exception if (1) it has "equivalent circumstantial guarantees of trustworthiness" to those statements covered by the enumerated hearsay exceptions, (2) it is offered as evidence of a material fact, (3) it is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and (4) admitting the statement will best serve the general purposes of the evidentiary rules and the interests of justice. Minn. R. Evid. 807; *see State v. Ahmed*, 782 N.W.2d 253, 259 (Minn. App. 2010). Lee challenges only the first and third of these requirements.

**Equivalent Circumstantial Guarantees of Trustworthiness**

To determine whether a statement has sufficient guarantees of trustworthiness, we consider the "totality of the circumstances." *State v. Martinez*, 725 N.W.2d 733, 737–38 (Minn. 2007). The relevant circumstances under rule 807 are those surrounding the making of the statement because the goal is to determine "whether the statement itself is reliable." *Ahmed*, 782 N.W.2d at 260–61 (citing *State v. Lanam*, 459 N.W.2d 656, 661 (Minn. 1990)). We consider (1) whether the declarant testified and was available for cross-examination, (2) whether there is any dispute that the declarant made the statement or any dispute as to the contents of the statement, (3) whether the declarant made multiple consistent versions of the statement, (4) whether the statement is against the declarant's penal or relationship

4

interest, (5) whether other evidence corroborates the statement, and (6) whether other evidence discredits the recanted version. *See Martinez*, 725 N.W.2d at 737 (citing *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn. 1985)); *State v. Robinson*, 718 N.W.2d 400, 410 (Minn. 2006); *State v. Plantin*, 682 N.W.2d 653, 659 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004).

All of these factors favor admission of A.D.'s prior statements. She testified at trial and was thoroughly examined by both the prosecutor and defense counsel regarding her relationship with Lee, the events of August 11-12, her alternative explanation for her injuries, and her motive for fabricating the statements to police and the nurse examiner. A.D. also acknowledged making the statements and did not dispute the contents of those statements, which were consistent across three consecutive interviews. A.D.'s testimony also establishes that the prior statements are against her ongoing relationship interest in Lee. And substantial evidence both corroborates A.D.'s initial statements and discredits her recanted version. We conclude that these factors amply establish the requisite guarantees of trustworthiness, supporting the district court's admission of the statements.

**More Probative Than Other Evidence**

Lee argues that A.D.'s prior statements are not "more probative" on the point for which they were offered than any other evidence because her live testimony is "the most probative" evidence. We disagree. Caselaw has consistently recognized the probative value of a testifying witness's contrary previous statement, *see Ortlepp*, 363 N.W.2d at 44, including the initial report of a recanting victim, *see Plantin*, 682 N.W.2d at 659. As the *Ortlepp* court noted, presenting the jury with live testimony and a contrary previous

5

statement permits the jury to weigh the credibility of the witness based on what they see and hear of that person in court and use that determination to decide between the two versions of events. 363 N.W.2d at 44 n.1. In this case, A.D.'s prior statements are probative evidence, made even more probative by A.D.'s contrary live testimony. The jury was in the best place to assess A.D.'s credibility and determine which version to believe.

In sum, Lee has not demonstrated that A.D.'s prior statements are insufficiently trustworthy or probative to warrant admission under Minn. R. Evid. 807.[1] Because he has not demonstrated any error, let alone plain error, in the admission of those statements, we conclude that his plain-error argument fails.

## II.

In a pro se supplemental brief, Lee asserts claims of ineffective assistance of counsel, prosecutorial misconduct, insufficient evidence, and evidentiary errors. We address each in turn.

**Ineffective Assistance of Counsel**

A claim of ineffective assistance of trial counsel presents mixed questions of law and fact subject to de novo review. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). To prevail on a claim that counsel was ineffective, a party "must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for his counsel's unprofessional error, the outcome would have

---

[1] Because the statements were properly admitted under Minn. R. Evid. 807, we need not address Lee's additional argument that Minn. R. Evid. 803(4) does not provide an alternative basis for admitting portions of those statements.

been different." *Leake v. State*, 767 N.W.2d 5, 10 (Minn. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064–65 (1984)).

Lee first contends that trial counsel's performance was objectively unreasonable because he failed to investigate and present favorable evidence. How to investigate and what evidence to present are matters of trial strategy left to the discretion of trial counsel. *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). An appellate court generally will not review a claim of ineffective assistance of counsel that is based on trial strategy. *Id.* Lee does not assert any failures that warrant deviation from this general principle. He first complains that trial counsel did not meet with or call as a trial witness M.J., who was with A.D. when she returned home on August 11. But, the record reflects that M.J. left immediately after Lee arrived at A.D.'s apartment and was not present during the incident with A.D. which gave rise to Lee's charges. M.J. also subsequently gave conflicting statements to police about whether he observed Lee with a gun at the apartment, and then, after charges were brought against Lee, disappeared and was unavailable to defense counsel or the state. Because of M.J.'s non-existent or minimal knowledge of the incident, his conflicting statements about Lee's possession of a gun, and his unavailability, it was reasonable that Lee's counsel, as a matter of trial strategy, could choose not to call M.J. as a witness. Consistent with our principle that we do not review an ineffective-assistance-of-counsel claim that is based on trial strategy, *id.*, we decline to do so here.

Lee also complains that trial counsel should have collected A.D.'s phone records to show that she and Lee had not ended their relationship—a fact to which she testified,

unchallenged. The decision not to pursue the cumulative phone evidence was well within counsel's strategic discretion.

Lee also asserts that his trial counsel was ineffective because he gave Lee poor advice regarding an offered plea agreement. This argument is also unavailing. Lee correctly states that a defendant, when offered a plea agreement, "has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012). But he has not demonstrated that his counsel's assistance in this regard was deficient. Lee does not claim that his trial counsel misrepresented the proffered plea agreement or provided him inaccurate or insufficient information about the consequences of a conviction after a trial. *Cf. Leake v. State*, 737 N.W.2d 531, 541 (Minn. 2007) (*Leake II*) (criticizing failure to provide defendant considering plea agreement with accurate information regarding possible sentence if convicted after trial). Rather, he asserts that trial counsel advised him to go to trial, rather than pleading guilty to second-degree assault in exchange for dismissal of the criminal-sexual-conduct charge, based on his assessment that "if the state is willing to drop the sexual assault, that means that they don't have a case and they won't win at trial." Even accepting this description of the exchange between Lee and his trial counsel regarding the proffered plea agreement, it amounts to no more than an inaccurate prediction about the outcome of the trial. As the Supreme Court explained in *Lafler*, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." 132 S. Ct. at 1391. Lee's claim that his trial counsel urged a strategy that proved unsuccessful does not establish constitutionally deficient performance.

Finally, Lee argues that trial counsel was ineffective in failing to preserve his right to a speedy trial. The record evinces no such failure. Rather, our careful review of the record reveals that trial counsel used the time between Lee's October plea of not guilty and his March jury trial to address A.D.'s recantations, investigate other potentially exculpatory evidence, and pursue—albeit unsuccessfully—dismissal of the charges against Lee. The record does not reflect that trial counsel was ineffective in his strategic decisions about how to defend Lee and move the case toward trial.

**Prosecutorial Misconduct**

We review claims of unobjected-to prosecutorial misconduct under a modified plain-error test. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The appellant must first show that error occurred and that it was plain. *Id.* If he does so, the state must then demonstrate that the error did not affect his substantial rights. *Id.*

Lee first claims misconduct because the prosecutor charged him by complaint rather than convening a grand jury to seek an indictment, which he contends was required under the Fifth Amendment to the United States Constitution. We disagree. The Fifth Amendment right to a grand jury does not apply to state prosecutions, *State v. Ronquist*, 600 N.W.2d 444, 448 (Minn. 1999), and Minnesota law does not require a grand jury indictment for first-degree criminal sexual conduct or second-degree assault with a dangerous weapon. *See* Minn. Stat. §§ 609.222, subd. 1, .342, subd. 2 (2014); Minn. R. Crim. P. 17.01, subd. 1.

Lee next argues that the prosecutor misrepresented the evidence about DNA found on the gun that police collected from Lee's residence. It is improper for a prosecutor to

intentionally misstate evidence. *State v. McArthur*, 730 N.W.2d 44, 53 (Minn. 2007). But our careful review of the record reveals that the prosecutor's description of seizure of the gun and the DNA evidence found on the gun during trial is supported by the testimony of the police officers and crime lab analysts, as well as A.D.'s description of the gun. Lee's claim of prosecutorial misstatement of the evidence fails.

Lee also argues that the prosecutor committed misconduct by inflaming the jury's passions with photographs of blood evidence that was not tested and verified as blood. This argument is similarly unavailing. While prosecutors "must avoid inflaming the jury's passions and prejudices" against defendants, *State v. McDaniel*, 777 N.W.2d 739, 752 (Minn. 2010) (quotation omitted), the record does not indicate any such misconduct. To the contrary, an officer who searched A.D.'s apartment testified that he found and photographed multiple areas of "blood-like substance," which he subsequently confirmed to be blood by swabbing with specialized blood-detection sticks. There was no impropriety in the prosecutor presenting the jury with the photographs of confirmed blood splatter as evidence corroborating and illustrating the officer's testimony about the state of A.D.'s apartment the morning after the alleged incident.

Finally, Lee claims misconduct in the prosecutor's continuation of the prosecution despite A.D.'s recantation. This issue was presented to and thoroughly considered by the district court, which appropriately determined that A.D.'s initial consistent statements and the corroborating evidence established probable cause to believe that Lee committed the charged offenses, and that her recantation did not eliminate that evidence but presented a

question for the jury to decide. The prosecutor did not commit misconduct by continuing to prosecute charges supported by probable cause.

**Sufficiency of the Evidence**

In reviewing a sufficiency of the evidence challenge, we review the record in the light most favorable to the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). If the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense, then we will not disturb the verdict. *Id.*

Lee contends that the evidence is insufficient to support his convictions, principally because A.D. "admitted" to lying about the incident. As noted above, Lee misstates the significance of A.D.'s recantation. The jury heard A.D.'s live testimony that Lee did not assault her and that she had lied about the incident. But it also heard evidence of A.D.'s three prior consistent statements that Lee threatened and injured her with a gun and his hands and forced her to have sex with him, plus substantial evidence tending to corroborate those statements. That evidence undisputedly establishes all of the elements of first-degree criminal sexual conduct and second-degree assault with a dangerous weapon, Minn. Stat. §§ 609.02, subds. 6, 10, .222, subd. 1, .342, subd. 1(e)(i) (2014), and we must presume that the jury believed it. Accordingly, A.D.'s recanting testimony does not undermine the sufficiency of the evidence.

Lee also contends that evidence indicating that A.D. had been sexually active with another man critically undermines his convictions. But, as Lee points out in his evidentiary

11

challenges, discussed below, the district court did not admit this evidence. It therefore has no bearing on the sufficiency of the record evidence.

**Evidentiary Errors**

Whether to admit or exclude evidence is a matter of discretion for the district court. *State v. Brown*, 739 N.W.2d 716, 720 (Minn. 2007). On appeal, appellant must show both error in the district court's evidentiary decision and resulting prejudice. *State v. Hohenwald*, 815 N.W.2d 823, 835 (Minn. 2012). But if there was no objection at trial, appellant bears the heavier burden of showing plain error affecting his substantial rights. *Manley*, 664 N.W.2d at 283.

Lee first argues that the district court erred by admitting the gun because the DNA evidence linking it to him and A.D. was insufficient. Lee did not object to the gun's admission at trial and cannot demonstrate plain error on appeal because the DNA evidence was not the basis for admitting the gun itself. Rather, the district court properly admitted the gun based on the testimony of a police officer that he obtained a warrant to search Lee's residence for the gun A.D. had described and, when executing the warrant, discovered and seized a gun matching that description.

Lee also complains that admitting the gun was prejudicial because the jury was not told that the gun was found among dirty clothes. Neither the gun nor the DNA evidence was *unfairly* prejudicial so as to warrant exclusion on this basis because the officer who discovered and seized the gun stated that he found the gun in a container full of clothes, the jury was presented a photograph of the gun in the container of clothes, and defense

12

counsel cross-examined the officer about the gun's location, the possibility of DNA transfer from the clothes, and the fact that the clothes were not tested for DNA.

Lee next argues that the district court improperly excluded crime lab reports tending to show that A.D. had been sexually active with multiple men around the time of the charged incident. This argument is unavailing for multiple reasons. While the district court held the evidence inadmissible under the "rape shield law," Minn. Stat. § 609.347, subd. 3 (2014), our review of the record reveals that a crime-lab analyst subsequently testified to the very evidence that Lee argues was improperly excluded—that DNA testing of the swabs collected from A.D.'s body indicated the presence of sperm from "two or more individuals." Accordingly, even if the district court's evidentiary ruling was erroneous, Lee suffered no resulting harm and is not entitled to relief. *See State v. Taylor*, 869 N.W.2d 1, 12 (Minn. 2015) (subjecting exclusion of evidence to harmless error review).

Lee also challenges the exclusion of A.D.'s recantation letter to the district court judge. Defense counsel sought to admit the letter after eliciting testimony about it from A.D. The district court excluded the letter, reasoning that it would give "undue weight" to the letter because it was directed to the judge, "as if that is somehow more significant than saying it to anyone else." The district court did not abuse its discretion in excluding the cumulative and potentially misleading evidence. *See* Minn. R. Evid. 403.

Finally, Lee argues that the district court erred by not conducting an evidentiary hearing on the credibility of A.D.'s recantation, citing *Ferguson v. State*, 779 N.W.2d 555 (Minn. 2010), and other postconviction cases addressing posttrial recantations. Those

13

cases are inapposite here, where A.D.'s recantation before trial and during her live testimony permitted the jury to determine her credibility.[2]

**Affirmed.**

---

[2] Lee argues that the cumulative effect of the various errors he asserts deprived him of a fair trial. Under some circumstances, the cumulative effect of multiple harmless errors may deny a fair trial and, therefore, require reversal for a new trial. *State v. Litzau*, 650 N.W.2d 177, 180 (Minn. 2002). But Lee has not demonstrated any error to aggregate.