*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0721**

Charles Kwadzo Sokpa-Anku, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 28, 2016
Affirmed
Kirk, Judge**

Ramsey County District Court
File No. 62-CR-13-4385

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Nicholas B. Wanka, Assistant Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant Charles Kwadzo Sokpa-Anku appeals the postconviction court's order denying his petition for postconviction relief following a jury trial where he was

convicted of two counts of medical assistance fraud over $5,000 and one count of medical assistance fraud over $1,000. Appellant argues that his convictions must be reversed based on insufficient evidence or, in the alternative, that the postconviction court abused its discretion in denying his petition for postconviction relief without an evidentiary hearing on his ineffective-assistance-of-counsel claim. We affirm.

## FACTS

Appellant owned and operated Carelinks Home Care, Inc. (Carelinks). In 2008, appellant enrolled Carelinks with the Department of Human Services (DHS) to provide home health care to individuals under Minnesota's Medicaid program. As a part of the enrollment process, appellant executed a DHS provider agreement in which he agreed "[t]o comply with all federal and state statutes and rules relating to the delivery of services to individuals and to the submission of claims for such services" and "[t]o assume full responsibility for the accuracy of claims submitted to [DHS] in accordance with the certification requirements of 42 Code of Federal Regulations, section 455.18 and Minnesota Statutes, section 256B.27, subd. 2."

In 2011, DHS conducted an audit of Carelinks and determined that appellant had failed to comply with the applicable state and federal regulations regarding billing and record retention. Appellant was charged, under Minn. Stat. § 609.466 (2012), with two counts of medical assistance fraud over $5,000 and one count of medical assistance fraud

over $1,000.[1]  At trial, the state offered evidence and testimony establishing appellant's practice of submitting claims to DHS indicating that Carelinks's Qualified Professionals (QPs) spent two hours with each patient regardless of how long the visit lasted. Carelinks's two QPs testified that visits did not always last two hours and ranged in length from thirty minutes to three hours.  The QPs further testified that they completed, and provided appellant with, documentation for each of their patient visits.  However, after searching Carelinks's billing records and corresponding documents, the state determined that a number of Carelinks's QP visit claims were not supported by requisite documentation.   The   state   also   offered   evidence   and   testimony   that   Carelinks: (1) submitted claims to DHS for over 24 hours of QP services in one day; (2) submitted claims for services provided between 2:00 a.m. and 4:00 a.m.; and (3) submitted claims where a single QP was reported to have provided services to multiple recipients, in multiple locations, at a single time.  Appellant was responsible for submitting Carelinks's QP visit claims to DHS.

Investigator Melanie Leslie, of the Medicaid Fraud Control Unit, testified regarding Carelinks's inadequate documentation and missing records for QP visit claims. Investigator Leslie prepared three charts to summarize her findings, which were admitted into evidence at trial.  The first chart, corresponding with count 1, identified $6,264.72 in fraudulent claims from August 4, 2009 to February 2, 2010.  The second chart,

---

[1] Appellant was also charged with an additional count of medical assistance fraud over $1,000 (count 3) and, in an amended complaint, two counts of theft (counts 5 and 6). Prior to trial, the state dismissed counts 3, 5, and 6.  For clarity, this opinion will adopt the labels used at trial, meaning charged counts 1 and 2 will each be referred to as "count 1" and "count 2," and charged count 4 will be referred to as "count 3."

3

corresponding with count 2, identified $9,686.07 in fraudulent claims from February 17, 2010 to August 3, 2010. The third chart, corresponding with count 3, identified $4,840.68 in fraudulent claims from August 31, 2010 to January 4, 2011. Investigator Leslie's calculations only included instances where Carelinks (1) submitted a QP visit claim without documentation establishing that the visit occurred, or (2) submitted a QP visit claim seeking reimbursement for two hours where documentation did not include the length of the visit. The jury found appellant guilty of medical assistance fraud exceeding $5,000 for counts 1 and 2 and exceeding $1,000 for count 3.

Before trial, appellant pleaded guilty to two counts of theft. However, shortly thereafter, appellant retained new counsel and moved to withdraw his guilty plea. On May 2, 2014, prior to granting appellant's motion to withdraw his guilty plea, the district court informed appellant, "If you pass up this deal I'm not going to consider it again." The district court explained, "I'm just going to allow [appellant] to withdraw his plea of guilty just because the [district court] was uncomfortable with the deal to begin with. It was a generous offer. Perhaps too generous, given the circumstances here." In addition, the district court stated:

> And I'm not going to consider, again, even if the state agrees, unless, you know, if they want to amend the complaint to charge other offenses, that's their right. But as far as the offer that they've made you will go to trial. And if you get convicted, that's what's going to happen.

Appellant claims that, following his conviction and sentencing, he discovered a June 3, 2014 letter, written by the prosecutor and sent to his counsel, containing another plea offer, which appellant claims was never conveyed to him. Appellant petitioned for

postconviction relief seeking to have his convictions reversed for insufficient evidence or, in the alternative, seeking specific performance of the June 2014 plea offer because he received ineffective assistance of counsel based on counsel's failure to inform him of the plea offer. The postconviction court denied appellant's petition without an evidentiary hearing. This appeal follows.

## D E C I S I O N

**I.** **The postconviction court did not abuse its discretion in denying appellant's petition based on his sufficiency-of-the-evidence claim.**

"We review a denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (citations omitted). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted). In reviewing a challenge to the sufficiency of the evidence, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *Id.*

Appellant argues that the state did not present sufficient evidence to prove beyond a reasonable doubt that appellant submitted claims for QP visits that did not occur, and that the amount of fraud exceeded $5,000 for his convictions under counts 1 and 2 and exceeded $1,000 under count 3. We disagree.

Appellant was convicted of medical assistance fraud under Minn. Stat. § 609.466, which provides:

> Any person who, with the intent to defraud, presents a claim for reimbursement, a cost report or a rate application, relating to the payment of medical assistance funds pursuant to chapter 256B, to the state agency, which is false in whole or in part, is guilty of an attempt to commit theft of public funds and may be sentenced accordingly.

At trial, the state introduced the provider agreement that appellant executed in order to enroll Carelinks with DHS. By executing the provider agreement, appellant agreed to comply with all relevant federal and state statutes including an obligation to ensure that the claims he submitted were truthful and accurate. *See* 42 C.F.R. § 455.18 (2012); Minn. Stat. § 256B.27, subd. 2 (2012). Moreover, appellant also assumed an obligation to fully document service verifications and maintain the documentation for at least five years from the date of billing. Minn. R. 9505.2175 (2013); Minn. R. 9505.2190, subp. 1 (2013).

Appellant acknowledged his practice of submitting claims to DHS that indicated that Carelinks's QPs spent two hours with each patient without knowing how long the visit lasted, and the QPs testified that visits did not always last two hours but ranged in length from thirty minutes to three hours. As such, we conclude that the record contains sufficient evidence, viewed in the light most favorable to the verdict, to permit the jurors to find that appellant submitted QP visit claims that were "false in whole or in part" in violation of Minn. Stat. § 609.466.

The record also contains evidence that the QPs completed, and provided appellant with, documentation for each of their patient visits. However, after searching Carelinks's billing records and corresponding documentation, the state determined that a number of QP visit claims were not supported by requisite documentation, despite appellant's obligation to maintain it under Minn. R. 9505.2190, subp. 1. Investigator Leslie explained that her calculations, presented to the jury in summary charts, were limited to instances where Carelinks had submitted QP visit claims that were inadequately documented. As noted above, Investigator Leslie calculated fraudulent claims of: $6,264.72 for count 1; $9,686.07 for count 2; and $4,840.68 for count 3. We must assume that the jury believed Investigator Leslie's testimony and calculations. *Ortega*, 813 N.W.2d at 100. Accordingly, we conclude that the record contains sufficient evidence, viewed in the light most favorable to the verdict, to permit the jurors to find that appellant committed medical assistance fraud in excess of $5,000 for the convictions under counts 1 and 2 and in excess of $1,000 under count 3.

Because the evidence was sufficient for the jury to find that appellant violated Minn. Stat. § 609.466 as charged, the postconviction court did not abuse its discretion when it denied appellant's petition for postconviction relief.

## II. The postconviction court did not err in denying appellant's petition based on his ineffective-assistance-of-counsel claim.

"We review the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo because such a claim involves a mixed question of law and fact." *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). We apply an abuse of

7

discretion standard in reviewing a district court's decision to deny appellant's request for an evidentiary hearing on a petition for postconviction relief. *Riley*, 819 N.W.2d at 167 (citations omitted).

Appellant argues that the postconviction court improperly denied his petition without an evidentiary hearing based on his ineffective-assistance-of-counsel claim. Specifically, appellant argues that counsel was ineffective in failing to inform him of the prosecutor's June 2014 plea offer. We examine ineffective-assistance-of-counsel claims under the Supreme Court's two-prong *Strickland* test. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984); *Leake v. State*, 767 N.W.2d 5, 10 (Minn. 2009)). "To prevail on a claim that his counsel was ineffective, appellant must demonstrate that (1) the attorney's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for the attorney's unprofessional error, the outcome would have been different." *Id.* (citations omitted). "We need not analyze both prongs if either one is determinative." *Id.* (citation omitted).

With regard to the second *Strickland* prong, the Supreme Court has established that, where a plea offer has lapsed due to counsel's failure to communicate it to a defendant, the defendant must demonstrate (1) "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel" and (2) "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

8

In its order denying relief, the postconviction court determined that "there is no reasonable probability that [appellant] would have accepted the [June 2014] plea offer or that the [district] court would have accepted its terms." Whether to accept a plea agreement is within a district court's discretion. *Johnson v. State*, 641 N.W.2d 912, 918 (Minn. 2002) (citations omitted). Here, the postconviction court supported its determination by reasoning that, prior to appellant withdrawing his guilty plea, "the [district] court indicated that it would not consider any similar offers in the future and specifically noted that it felt the previous plea agreement was too generous. The alleged uncommunicated offer was even more lenient than the withdrawn plea agreement." We agree with the postconviction court's assessment of the June 2014 plea offer, which, in comparison to the prior plea agreement, would have provided appellant with a more lenient disposition than the plea offer he rejected by withdrawing his guilty plea.

Accordingly, we conclude that the postconviction court did not err in denying appellant's ineffective-assistance-of-counsel claim because appellant is unable to demonstrate that a reasonable probability exists that, but for counsel's error, the outcome would have been different. Because appellant failed to meet the second *Strickland* prong, we need not address counsel's performance under the first *Strickland* prong. As a result, the postconviction court did not abuse its discretion in denying appellant's petition without an evidentiary hearing.

**Affirmed.**