*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1915**

State of Minnesota,
Respondent,

vs.

Daniel Gebreamlak,
Appellant.

**Filed December 12, 2016
Affirmed
Ross, Judge**

Ramsey County District Court
File No. 62-CR-13-1057

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Ross, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

A jury learned that a police officer saw Daniel Gebreamlak speeding, temporarily losing control of his car, failing to signal a lane change, and failing to promptly stop when

the officer signaled him to stop. The jury also learned that the officer noticed that Gebreamlak smelled like an alcoholic beverage, fumbled for his driver's license, had bloodshot and watery eyes, and slurred his speech. The officer administered both the horizontal- and vertical-gaze nystagmus tests, which indicated that Gebreamlak was intoxicated. The jury found Gebreamlak guilty of driving under the influence of alcohol, and Gebreamlak asks us to reverse his conviction because, he maintains, the evidence was insufficient to prove him guilty. We are unpersuaded by his argument and affirm.

## FACTS

The state charged Daniel Gebreamlak with one count of first-degree driving while impaired and one count of first-degree refusal to submit to a chemical test. The district court dismissed the test-refusal charge and held a jury trial for the impaired-driving charge.

St. Anthony Police Officer Kiel Rushton testified that he was on overnight patrol in Falcon Heights in February 2013 when he saw a car moving fast on snow-covered Snelling Avenue. The car turned onto Larpenteur Avenue, temporarily fishtailing out of control. The officer followed the car on Larpenteur. He watched the car move between lanes without signaling. The officer activated his emergency lights, but the car continued on without immediately stopping. He followed a short distance further, and the car turned into a parking lot and stopped.

Officer Rushton told the jury that he approached the car and spoke to the driver, Gebreamlak. The officer smelled the odor of an alcoholic beverage. Gebreamlak's eyes were watery and bloodshot. Gebreamlak slurred his words when he spoke. After Officer Rushton asked Gebreamlak to produce his driver's license, it appeared that Gebreamlak

2

was having difficulty dividing his attention and had "an overall delay in motor skills." The officer perceived that Gebreamlak was intoxicated. He directed Gebreamlak to step out of the car so he could administer field sobriety tests. Because of the unsafe surface conditions, the officer forewent the balance tests and administered only the nystagmus tests.

Officer Rushton described the horizontal-gaze nystagmus test, including how he administered each of its three segments. He observed that Gebreamlak exhibited a "lack of smooth pursuit" in the first segment, an "almost immediate[]" nystagmus in the second segment, and a "very prevalent" nystagmus in the third segment. He said that he decided to also administer the vertical-gaze nystagmus test. He explained that "the person who is exhibiting vertical nystagmus has a high blood alcohol concentration for what their body is used to." Again the officer observed a "present and prevalent" nystagmus. Based on what the officer saw in Gebreamlak's driving, his odor and behavior, and his pronounced nystagmus, he concluded that Gebreamlak was intoxicated and arrested him.

Gebreamlak cross-examined Officer Rushton. The officer acknowledged that drivers are sometimes nervous and have trouble finding their licenses or handling their wallets. And he acknowledged that eye redness can result from conditions other than alcohol consumption, that Gebreamlak spoke with an accent, and that nystagmus might result from other depressants or natural conditions unrelated to alcohol intoxication. He also acknowledged that Gebreamlak did not appear to have difficulty following directions or maintaining his balance during the nystagmus test.

The jury found Gebreamlak guilty of driving under the influence of alcohol. Gebreamlak appeals.

**D E C I S I O N**

Gebreamlak argues that the state failed to produce evidence sufficient to prove his guilt beyond a reasonable doubt. We analyze a challenge to the sufficiency of the evidence differently depending on whether the state relied on direct or circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). Generally, we will not reverse a jury's guilty verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty. *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014). But when a conviction rests on circumstantial evidence, we scrutinize more strictly, considering whether the proved circumstances and the reasonable inferences drawn from those circumstances are consistent with a defendant's guilt and inconsistent with any other rational hypothesis. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010).

Gebreamlak argues that we should apply the circumstantial-evidence standard of review because the jury had to infer that alcohol impaired his ability to drive. The state suggests that we should apply the direct-evidence standard. We are convinced that the conviction withstands our review under either standard.

Under the heightened-scrutiny test, we first identify the circumstances proved, which are those circumstances that are consistent with the guilty verdict. *Id.*; *State v. Hawes*, 801 N.W.2d 659, 668–69 (Minn. 2011). We next independently examine the reasonableness of any inferences that might be drawn from those proved circumstances, including inferences consistent with any rational hypotheses other than guilt. *Al-Naseer*, 788 N.W.2d at 473–74.

4

Officer Rushton's testimony consistent with the guilty verdict informs us that Gebreamlak was speeding, temporarily lost control of his car while turning, failed to signal a lane change, failed to immediately stop when signaled, and had the tell-tale signs of intoxication—bloodshot and watery eyes, slurred speech, delayed and fumbling motor skills, divided-attention difficulties, and the strong odor of an alcoholic beverage. He also failed every segment of both nystagmus tests administered by the officer, and the jury's verdict informs us that the jury was satisfied that intoxication, and not some other source, caused the nystagmus.

Given that the jury accepted the inference that alcohol impairment caused Gebreamlak's nystagmus, the second question in the analysis—whether the circumstances allow for a rational hypothesis *other than* Gebreamlak's guilt—presents a clear answer: no. Gebreamlak argues that speeding, multiple lane changes, failing to signal, and failing to pull over are behaviors that sober drivers might engage in. He points to the poor road conditions as the innocent cause of his losing vehicular control, and he has answers for the officer's observations of his person. He urges, for example, that watery, bloodshot eyes might have resulted from alcohol consumption that fell short of consumption necessary for impairment. He adds that his perceived slurred speech might really have been his foreign accent. And he suggests that his nystagmus might have resulted naturally. His argument fails based on the circumstance, inferred from the verdict, that intoxication and not Gebreamlak's natural physiology, caused Gebreamlak's nystagmus.

Even putting aside the jury's conclusions drawn from the nystagmus tests, however, Gebreamlak's supposed innocent hypothesis rests on an improbable series of coincidences.

5

We do not review each circumstance proved in isolation, but as a whole. *State v. Andersen*, 784 N.W.2d 320, 332 (Minn. 2010). And it is not the state's burden to remove *all* doubt, only all *reasonable* doubt. *State v. Hughes*, 749 N.W.2d 307, 313 (Minn. 2008). It is certainly possible, but it is not plausible, that every one of the various indicators of Gebreamlak's apparent intoxication was caused by something other than intoxication. We would have to accept as reasonable that, although Gebreamlak undisputedly had been drinking, his failing to drive a speed consistent with the weather conditions, failing to signal lane changes, failing to maintain control, failing to immediately respond to emergency lights, and fumbling for his driver's license were *all* caused by something other than excessive alcohol consumption. And we also would have to accept as reasonable that a trained and experienced police officer cannot distinguish between an accent and slurred speech. The hypothesis that Gebreamlak was not under the influence of alcohol is not reasonable under all the circumstances proved and taken as a whole.

The conviction easily satisfies standard scrutiny in our review for proof beyond a reasonable doubt, as it also easily survives heightened scrutiny.

**Affirmed.**